944 A.2d 516

**STATE of Maryland**

v.

**Mahamu D. KANNEH.**

**No. 94, Sept. Term, 2007.**

Court of Appeals of Maryland.

March 14, 2008.

Kathryn Grill Graeff, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for appellant.

Amy E. Brennan, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ALAN M. WILNER (Retired, Specially Assigned) and DALE R. CATHELL (Retired, Specially Assigned), JJ.

GREENE, J.

This case arises from a criminal proceeding in which Mahamu Kanneh was charged with sexual abuse of a minor and related offenses. Although Kanneh was arrested on August 18, 2004, his trial was repeatedly postponed for different reasons, mainly the time it took to process the DNA evidence, and the inability to secure a qualified interpreter in Kanneh's native language of Vai.[1] Finally, on July 17, 2007, the court dismissed the case on the grounds that Kanneh's right to a speedy trial had been violated. The State appealed to the Court of Special Appeals, and before the intermediate appellate court could hear the case, we granted certiorari. *State v. Kanneh*, 402 Md. 352, 936 A.2d 850 (2007).

We shall hold that the 35 month delay in this case, while of sufficient length to require us to engage in a speedy trial analysis, does not justify a conclusion that Kanneh's right to speedy trial was violated.

## FACTUAL AND PROCEDURAL BACKGROUND

Montgomery County Police arrested Kanneh for sexual abuse of a minor child on August 18, 2004. On December 3, 2004, Kanneh was charged by indictment, in the Circuit Court for Montgomery County, with sexual abuse of a minor and related offenses.[2] Kanneh's attorney entered her appearance on January 18, 2005, and a trial date was set for April 5, 2005. At a scheduling conference held on January 28, 2005, the State pointed out that the DNA evidence would likely not be ready in time for the April 5, 2005 trial date, and Kanneh's counsel

---

1. Vai is a rare language spoken primarily in Liberia and Sierra Leone. It is a Mande language invented in the 1830s. National Museum of African Art, Smithsonian Institution, *Inscribing Meaning: Vai and the Mande Syllabaries*, http://africa.si.edu/exhibits/inscribing/vai.html.

2. Kanneh was indicted on three counts, in violation of three statutes: sexual abuse of a minor, Md.Code (2002, 2007 Supp.), § 3–602 of the Criminal Law Article, continuing course of conduct with child, Md. Code (2002), § 3–315 of the Criminal Law Article, and rape in the second degree, Md.Code (2002, 2007 Supp.), § 3–304 of the Criminal Law Article.

agreed, noting that the defense also needed time to review the results. Defense counsel stated "we certainly don't have a problem with [ ] June 6th." The trial date was rescheduled for June 6, 2005, and both parties agreed to another status conference on March 4, 2005. During that same January 28, 2005 scheduling conference, Kanneh first disclosed to the trial court that English was his second language and requested an interpreter for his native language, Vai.[3]

At the status conference on March 4, 2005, the State indicated that the DNA evidence had still not been processed, and the parties set the date of May 27th, 2005 for a motions hearing. On May 27, 2005, defense counsel requested a continuance because she had not yet received the DNA results, nor had the State. At that same hearing, Kanneh, through his attorney, waived his right to be tried within 180 days, pursuant to Md.Code (2001), § 6–103 of the Criminal Procedure Article.[4] On May 31, 2005, the court rescheduled the trial for November 28, 2005, as a result of the unavailability of the DNA evidence.

---

**3.** Although Kanneh was able to communicate in English, there is no present dispute between the parties that an interpreter was necessary to ensure a fair trial.

**4.** That section provides as follows:

(a) *Requirements for setting date.*—(1) The date for trial of a criminal matter in the circuit court shall be set within 30 days after the earlier of:

(i) the appearance of counsel; or

(ii) the first appearance of the defendant before the circuit court, as provided in the Maryland Rules.

(2) The trial date may not be later than 180 days after the earlier of those events.

(b) *Change of date.*—(1) For good cause shown, the county administrative judge or a designee of the judge may grant a change of the trial date in a circuit court:

(i) on motion of a party; or

(ii) on the initiative of the circuit court.

(2) If a circuit court trial date is changed under paragraph (1) of this subsection, any subsequent changes of the trial date may only be made by the county administrative judge or that judge's designee for good cause shown.

(c) *Court rules.*—The Court of Appeals may adopt additional rules to carry out this section.

At a motions hearing on November 1, 2005, the parties discussed their efforts to secure an interpreter for Kanneh. Neither the State, nor Kanneh's attorney had been able to locate an interpreter, and for that reason, the trial judge postponed the case until January 23, 2006. At a motions hearing on January 13, 2006, although it appeared that the parties had found an interpreter, they realized that this interpreter was not qualified to perform simultaneous interpretation for a trial that had the potential to last four or five days. As a result, the trial judge postponed the trial date until May 8, 2006. Again, at a motions hearing on May 3, 2006, the parties brought to the court's attention the likelihood that they would be unable to secure an interpreter by the trial date, and the trial date was postponed until October 16, 2006.

In anticipation of that trial date, at a hearing on September 22, 2006, the parties met for a motions hearing, where the State asked the court to proceed to trial without an interpreter. The State presented the court with a transcript of Kanneh's interview with the police, which was conducted in English. In response, Kanneh's counsel noted that, even in the transcript, there were instances where the detective had to explain words and instances where Kanneh's answer was inappropriate to the question being asked. Kanneh's attorney also noted that without an interpreter to help her communicate with Kanneh, she was unable to determine whether the problems communicating were the result of a language barrier or a mental health issue. The court did not rule on the State's motion to proceed without an interpreter, and instead ordered a competency evaluation. On that same date, the court postponed the trial date to February 26, 2007.

Someone was finally secured[5] to interpret the proceedings, and she was present during a motions hearing on February 16, 2007. On that date, however, the interpreter indicated that she had "just had some pretty serious surgery" and the

---

5. The court had previously located another interpreter, however, because of that interpreter's personal feelings regarding child abuse cases, she left the courtroom and did not return.

court rescheduled the trial date for July 30, 2007, because it would be "cruel and unusual to expect a person having just had some major surgery to be compelled to be here in discomfort."

On February 23, 2007, Kanneh filed a written opposition to the February 16, 2007 postponement and at a status conference on March 1, 2007, indicated his intent to file a motion to dismiss on the basis that his right to a speedy trial had been violated. On June 20, 2007, Kanneh filed a "Memorandum of Law on Violation of Mr. Kanneh's Speedy Trial Rights."

On July 17, 2007, the court granted Kanneh's motion to dismiss. In doing so, the trial court addressed the four factor test established in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The court determined that Kanneh had been prejudiced because he had been on pretrial supervision for almost three years. Weighing the lengthy delay in this case and the reasons for the delay, namely the DNA evidence and the need for an interpreter, the court came to the conclusion that Kanneh's right to a speedy trial had been violated. The State filed a timely notice of appeal to the Court of Special Appeals. Before any proceedings in the intermediate appellate court, we granted certiorari. *State v. Kanneh*, 402 Md. 352, 936 A.2d 850 (2007).

## DISCUSSION

We are asked in the present case to determine whether Kanneh's right to a speedy trial has been violated. This Court has consistently applied the four factor balancing test announced by the U.S. Supreme Court in *Barker* to address allegations that a defendant's right to a speedy trial, as provided by the Sixth Amendment of the United States Constitution and Article 21 of the Maryland Declaration of Rights, has been violated. *Glover v. State*, 368 Md. 211, 221, 792 A.2d 1160, 1166 (2002). In *Barker*, the Supreme Court rejected a bright-line rule to determine whether a defendant's right to a speedy trial had been violated, and instead adopted "a balancing test, in which the conduct of both the prosecution

and the defendant are weighed." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2191–92, 33 L.Ed.2d at 116. The Court identified four factors to be used in determining whether a defendant's right to a speedy trial has been violated: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. None of these factors are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *State v. Bailey*, 319 Md. 392, 413–14, 572 A.2d 544, 554 (1990) (quoting *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.).

## I. *Length of Delay*

This Court has noted that the first factor, the length of the delay, is a "double enquiry," because a delay of sufficient length is first required to trigger a speedy trial analysis, and the length of the delay is then considered as one of the factors within that analysis. *Glover*, 368 Md. at 222–23, 792 A.2d at 1166–67. We have also remarked that for purposes of a speedy trial analysis, the length of the delay is measured from the date of arrest. *Divver v. State*, 356 Md. 379, 388, 739 A.2d 71, 76 (1999). In the present case, there was a delay of approximately 35 months between the time Kanneh was arrested, and the date Kanneh's trial was set to begin. We have previously determined that a delay of one year and 14 days "was sufficiently inordinate to constitute a 'triggering mechanism'" such that this Court should engage in a speedy trial balancing analysis. *Epps v. State*, 276 Md. 96, 111, 345 A.2d 62, 72 (1975); *see also Glover*, 368 Md. at 223, 792 A.2d at 1167 (explaining that this Court has "employed the proposition that a pre-trial delay greater than one year and fourteen days was 'presumptively prejudicial'"); *Brady v. State*, 291 Md. 261, 265, 434 A.2d 574, 576 (1981) (where the State admitted that a fourteen month delay established a *prima facie* speedy trial claim). Therefore, we hold that the 35 month delay in this case was sufficiently long such that we should engage in an

analysis to determine whether Kanneh's right to a speedy trial was violated.

■ With regard to the length of the delay as a factor in the speedy trial analysis, the Supreme Court said in *Barker:* "We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Barker,* 407 U.S. at 523, 92 S.Ct. at 2188, 33 L.Ed.2d at 113 (holding that even though a delay of five years was extraordinary, the fact that the defendant was minimally prejudiced and did not request a speedy trial counterbalanced the extraordinary delay). Instead, the Court considered the length of the delay as one factor to be used in determining whether the defendant's right to a speedy trial had been violated. The Court also noted that the length of the delay "is necessarily dependent upon the peculiar circumstances of the case." *Barker,* 407 U.S. at 530–31, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. In particular, "the delay that can be tolerated is dependent, at least to some degree, on the crime for which the defendant has been indicted." *Glover,* 368 Md. at 224, 792 A.2d at 1167.

At a hearing on September 22, 2006, both parties in this case agreed that this was a "very complicated" child abuse case because it involved the presentation of DNA evidence. With respect to DNA evidence and length of delay, this Court has said: "DNA evidence may provide that exactness, and to the extent that the delay is not inordinate, society may weigh the precision which DNA evidence potentially provides more heavily than proceeding with a murder trial without such evidence in the name of expediency." *Glover,* 368 Md. at 224, 792 A.2d at 1168.

■ Furthermore, we note that, of the four factors we weigh in determining whether Kanneh's right to a speedy trial has been violated, "[t]he length of delay, in and of itself, is not a weighty factor." *Glover,* 368 Md. at 225, 792 A.2d at 1168. *See also Erbe v. State,* 276 Md. 541, 547, 350 A.2d 640, 644 (1976) (noting that "delay is the least conclusive of the four factors identified in *Barker*") (quoting *U.S. v. Brown,* 354 F.Supp. 1000, 1002 (E.D.Pa.1973)). Although the delay of 35

months in this case is certainly sufficient to merit constitutional scrutiny, the length of the delay is the least determinative of the four factors that we consider in analyzing whether Kanneh's right to speedy trial has been violated.

## II. Reasons for Delay

■ We balance the length of the delay against three other factors, one of which is the reason for the delay. In *Barker,* the Supreme Court noted that different reasons should be assigned different weights:

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117 (footnote omitted).

■ In considering this factor, we will address each postponement of the trial date in turn. The original trial date of April 5, 2005, was changed to June 6, 2005, because it was apparent that the DNA evidence would not be ready in time to give the defense an opportunity to review it before trial. Where, as here, a postponement is the result of the unavailability of DNA evidence, and there is no evidence that the State failed to act in a diligent manner, the grounds for postponement are essentially neutral and justified. *Glover,* 368 Md. at 226, 792 A.2d at 1169 (concluding that a postponement as a result of the unavailability of DNA evidence was "both neutral and justified" where there was "no evidence that the State failed to act in a diligent manner"). The second continuance, which rescheduled the trial date from June 6, 2005, to November 28, 2005, was also the result of the unavailability of the DNA evidence, and as a result, we determine that this postponement was also largely neutral.

 The third continuance changed the trial date from November 28, 2005, to December 12, 2005. This postponement was the result of the State's motion to consolidate Kanneh's case with that of his father, Edward Massaquoi. Although we construe this reason for delay against the State, in the balance, it has relatively little weight given that this only resulted in a delay of approximately two weeks.

 The fourth postponement, which rescheduled the trial until January 23, 2006, was partly the result of Kanneh's request for severance, and partly the result of the unavailability of an interpreter. Although we cannot find a case where this Court has addressed the unavailability of an interpreter as a reason for delay, we agree with the Court of Appeals of Minnesota that a delay caused by the unavailability of an interpreter does not weigh heavily against the State. *See State v. Cham*, 680 N.W.2d 121, 125 (Minn.Ct.App.2004) (noting that where the inability to locate an interpreter for a rare language was not the result of bad faith on behalf of the State, or lack of effort by court administrators, the reason for delay weighs in favor of the State). The unavailability of an interpreter is analogous to the problem of overcrowded courts, which we have noted is a "more neutral reason" that should be "weighted less heavily" but considered nonetheless. *See Glover*, 368 Md. at 225, 792 A.2d at 1168 (quoting *Bailey*, 319 Md. at 412, 572 A.2d at 553).

 The next nine month delay, between January 23, 2006 and October 16, 2006, was also caused by the inability to secure an interpreter who could simultaneously interpret the court proceedings. The unavailability of an interpreter was not the result of any failure on behalf of the State, or the court administration. It was not until January 28, 2005, that a request was made for an interpreter. Indeed, the trial judge noted, in her ruling, that there had been "Herculean efforts on behalf of the State's Attorney." [6] Because the unavailability of

---

**6.** Both parties in this case attempted to locate an interpreter. The clerk of the court attempted to locate an interpreter using the court's lan-

an interpreter was not the result of bad faith, this delay is not weighed against the State.

■ The trial date was next reset for February 26, 2007, both because of the ongoing attempt to find a qualified interpreter, and in order for Kanneh to undergo a competency evaluation. While we cannot find a case where we have directly addressed to whom delays as a result of competency evaluations are charged, the Court of Special Appeals has said that "delays in the proceedings caused by examinations to determine defendant's competence are charged against the defendant because such evaluations are solely for his benefit." *Lewis v. State*, 79 Md.App. 1, 17, 555 A.2d 509, 517 (1989); *see also Smith v. State*, 276 Md. 521, 537–39, 350 A.2d 628, 638–39 (1976) (O'Donnell, J., concurring) (noting that when the defendant raised the issue of competency, it became incumbent on the court to determine his competency, and it would be unduly burdensome to require the State to prepare for a trial that might never go forward if the defendant is found not competent to stand trial). We agree that delays for the purpose of determining the defendant's competence are weighed against the defendant.

■ The case was postponed one final time when the trial judge noted that the only interpreter who had been located had recently undergone surgery when the parties met for a motions hearing on February 16, 2007, and as a result was experiencing severe discomfort. This delay is attributable to the unavailability of an interpreter, and because it was not the result of any bad faith, if weighed against the State, it is only slightly.

### III. Assertion of the Right to Speedy Trial

■ In *Barker*, the Supreme Court explained that:
[t]he defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining wheth-

guage bank, and by calling the Liberian Embassy, the translation association, and the international language school.

er the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. *Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 117–18. The Court also noted that, in applying the four factor balancing test, courts should "weigh the frequency and force of the objections." *Barker*, 407 U.S. at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at 116. In this case, Kanneh, with the assistance of counsel, acquiesced to each postponement until he objected to the final postponement on February 16, 2007. Because Kanneh, who was assisted by counsel, failed to object to any postponements until the very last postponement, we weigh this factor against Kanneh and in favor of the State, and note that, under *Barker*, Kanneh's failure to assert his right is entitled to "strong evidentiary weight." *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

## IV. Prejudice

The Supreme Court, in *Barker*, noted that prejudice should be weighed with respect to the three interests that the right to a speedy trial was designed to preserve:

(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118 (footnote omitted). In this case, Kanneh spent one night in jail before posting bond, and subsequently was not incarcerated pending trial. Although he was on pretrial supervision under the condition that he not be around children, it is not a restriction that he ever complained was onerous. Likewise, although the defense argues that Kanneh was prejudiced because he did not seek new employment or enroll in school because of the pending case, this evidence only shows, at best, minimal prejudice.

We turn to the final of the three factors under the prejudice analysis, and the most serious, the possibility that the defense might be impaired. In the case at bar, there is no assertion of any actual prejudice to the defense's case, for example, that any defense witnesses have become unavailable due to the delay. In *Barker*, the Supreme Court determined that prejudice was minimal where the defendant spent ten months in jail pending trial. *Barker*, 407 U.S. at 534, 92 S.Ct. at 2194, 33 L.Ed.2d at 119. In that case, the defendant, Barker, lived under a cloud of suspicion for over four years, but there was no claim that any of his witnesses died or became unavailable as a result of the delay. *Id.* In this case, there is even less prejudice, and, weighing this final factor, we conclude that Kanneh's right to a speedy trial was not violated.

## CONCLUSION

Although the delay in this case was significant, in light of the complex nature of the case, the length of the delay does not weigh heavily against the State. Because there was no bad faith on the part of the State in securing or failing to secure an interpreter, which was the primary reason for the delay, this factor does not weigh against the State. It is significant that Kanneh failed to object to all of the postponements but the last, and this factor is accorded great evidentiary weight. Finally, we note that any prejudice against Kanneh, as a result of the delay, was minimal. Balancing all of these factors, we cannot say that Kanneh's right to a speedy trial was violated.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. APPELLEE TO PAY THE COSTS.**