52 A.3d 161

**Bobby Rydell LLOYD, II**

v.

**STATE of Maryland.**

**No. 1144, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Sept. 4, 2012.

324

Bradford C. Peabody (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

James E. Williams (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: KEHOE, BERGER, LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

LAWRENCE F. RODOWSKY (Retired, Specially Assigned), J.

The appellant, Bobby Rydell Lloyd, II (Lloyd), appeals his conviction in the Circuit Court for Garrett County for second degree assault.

We are presented with one issue on appeal:

"Was [Lloyd] denied his federal and state constitutional right to [a] speedy trial?"

For the reasons that follow, we shall affirm. Our analysis includes consideration of the effect on constitutional speedy trial analysis of a prayer for jury trial removal of a prosecution within the exclusive original jurisdiction of the District Court of Maryland.

## Factual Background

On June 27, 2011, Lloyd was convicted of second degree assault on a not guilty statement of facts. He was sentenced on the same day to ten years of incarceration, all but three suspended, and five years of probation.

Lloyd was arrested on October 12, 2010, the day of the assault.[1] He was additionally charged with assault in the first degree and malicious destruction of property.

---

1. Lloyd threw a ten pound rock at his girlfriend through the front passenger side window of a car in which she was seated in the driver's

The total period from Lloyd's arrest to his trial in the circuit court is eight months and fifteen days. The relevant proceedings during that period are enumerated below:

October 13, 2010: Bail set by a District Court Commissioner in the instant case at $10,000.

October 15, 2010: On bail review in this case by the District Court, bail set at $100,000 (100% acceptable).

October 18, 2010: Defense counsel enters his appearance in the District Court.

October 22, 2010: The State moves to consolidate the subject case with another, based on common facts.

October 27, 2010 Lloyd requests subpoenae for witnesses for preliminary hearing set for December 7, 2010.

December 7, 2010: Preliminary hearing postponed. State enters *nolle prosequi* to first degree assault charge. At this point, the subject case came within the exclusive original jurisdiction of the District Court. See Maryland Code (1974, 2006 Repl.Vol.), § 4–301(b)(5) of the Courts and Judicial Proceedings Article, together with Maryland Code (2002), §§ 3–203 and 6–301 of the Criminal Law Article. Case assigned trial date of January 10, 2011.

January 10, 2011: Lloyd prays jury trial.

January 10, 2011: District Court record received in circuit court.

January 12, 2011: Lloyd files omnibus motion, including *pro forma* request for speedy trial.

January 20, 2011: Bail review hearing held. Bail unchanged. No demand for speedy trial.

March 1, 2011: Case assigned jury trial date of May 18, 2011.

April 18, 2011: Bail review hearing held. Bail unchanged. No demand for speedy trial.

---

seat. The car was in the driveway of her residence, which they shared. At the time of the assault, the victim was attempting to flee from Lloyd.

May 18, 2011: Case postponed for good cause. The single Circuit Court for Garrett County jury courtroom to be in use for trial of older case.

May 24, 2011: Case assigned jury trial date of June 28, 2011.

June 27, 2011: Defense counsel argues motion to dismiss for lack of a speedy trial. The motion was written by Lloyd. Motion denied.

June 27, 2011: Case tried on not guilty statement of facts. *Nolle prosequi* entered as to malicious destruction of property count in the subject case and to all counts in a companion case charging threat of arson. State calls violation of probation case against Lloyd.

We shall present more facts in the discussion as necessary.

## Discussion

The Sixth Amendment of the United States Constitution guarantees defendants in criminal prosecutions the right to a speedy trial. It is a fundamental right " 'imposed by the Due Process Clause of the Fourteenth Amendment on the States.' " *State v. Bailey,* 319 Md. 392, 395, 572 A.2d 544, 545 (1990) (quoting *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101, 108 (1972)). Article 21 of the Maryland Declaration of Rights serves the same purpose in Maryland. To determine if an individual's right to a speedy trial has been violated, the Court utilizes a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Bailey,* 319 Md. at 396, 572 A.2d at 546 (quoting *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117). " 'A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis.' " *Id.* Four factors have been identified by the Supreme Court and consistently utilized in Maryland to make this constitutional determination: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Id.* at 409, 572 A.2d at 552. *See also State v. Kanneh,* 403 Md. 678, 688, 944 A.2d 516, 521 (2008); *Glover v. State,* 368 Md. 211, 222, 792 A.2d

1160, 1167 (2002); *Wilson v. State*, 281 Md. 640, 644, 382 A.2d 1053, 1056, cert. denied., 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978).

## *Length of Delay*

The length of delay is measured from the date of arrest. *Kanneh*, 403 Md. at 688, 944 A.2d at 521; *Bailey*, 319 Md. at 410, 572 A.2d at 552. There is "no specific duration of delay that constitutes a *per se* delay of constitutional dimension." *Glover*, 368 Md. at 223, 792 A.2d at 1167. The Court of Appeals has consistently held, however, that a delay of more than one year and fourteen days is "presumptively prejudicial" and requires balancing the remaining factors. *Id.* (fourteen month delay triggered constitutional analysis); *Kanneh*, 403 Md. at 688, 944 A.2d at 522 (thirty-five month delay triggered constitutional analysis); *Bailey*, 319 Md. at 411, 572 A.2d at 553 (two year delay triggered constitutional analysis). Cases have held that a delay of less than this time did not trigger the balancing test. *See State v. Gee*, 298 Md. 565, 579, 471 A.2d 712, 719 (1984) (less than six months elapsing between arrest and trial was not "inordinate delay," and, because the delay was "not presumptively prejudicial, there [was] no necessity for inquiry into the other factors which go into the balance"); *Collins v. State*, 192 Md.App. 192, 213–14, 993 A.2d 1175, 1187–88 (2010) (five month delay did not trigger balancing analysis); *Smart v. State*, 58 Md.App. 127, 132, 472 A.2d 501, 503 (1984) (one day less than six months delay did not trigger balancing analysis); *Isaacs v. State*, 31 Md.App. 604, 614, 358 A.2d 273, 279 (1976) (delay of five months and six days did not trigger constitutional analysis). *But see Battle v. State*, 287 Md. 675, 686, 414 A.2d 1266, 1272 (1980) ("The State concedes that the eight month and twenty day delay 'might be construed to be of constitutional dimension so as to trigger the prescribed balancing test.'").

The nature of the charges levied also affects the permissible delay: the more complex and serious the crime, the longer a delay might be tolerated because "society also has an interest in ensuring that" longer sentences "are rendered

upon the most exact verdicts possible." *Glover*, 368 Md. at 224, 792 A.2d at 1168; *Bailey*, 319 Md. at 411, 572 A.2d at 553 (" 'the delay that can be tolerated for an ordinary street crime is considerably less than a serious, complex conspiracy charge' " (quoting *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117)). Finally, "the length of delay in and of itself is not a weighty factor." *Id.* at 225, 792 A.2d at 1168. "[T]he duration of the delay is closely correlated to the other factors, such as the reasonableness of the State's explanation for the delay, the likelihood that the delay may cause the defendant to more pronouncedly assert his speedy trial right, and the presumption that a longer delay may cause the defendant greater harm." *Id.*

■ Here, a total of eight months and fifteen days elapsed between Lloyd's arrest and his trial. This delay is below the presumptively prejudicial one year and fourteen day mark. It is, however, two months more than the several cases holding that a six-month delay was not presumptively prejudicial. As in *Battle*, this delay "might" be construed as presumptively prejudicial and of constitutional dimension. We shall therefore address the remaining three factors.

*Reason for Delay*

■ As the Court of Appeals stated in *Glover*, 368 Md. at 225, 792 A.2d at 1168:

> " 'Closely related to length of delay is the reason the government assigns to justify the delay. ... [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should [be] considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.'

"*Bailey,* 319 Md. at 412, 572 A.2d at 553 (quoting *Barker,*
407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117)."

### October 12, 2010 to January 10, 2011

■ This is a period of two months and twenty-nine days
measured from Lloyd's arrest to the day on which he could
have been tried in the District Court, but instead prayed a
jury trial. The reason for the delay is neutral, and should not
be charged to either party. *See Howell v. State,* 87 Md.App.
57, 82, 589 A.2d 90, 102, *cert. denied,* 324 Md. 324, 597 A.2d
421 (1991) ("The span of time from charging to the first
scheduled trial date is necessary for the orderly administra-
tion of justice, and is accorded neutral status."); *Marks v.
State,* 84 Md.App. 269, 282, 578 A.2d 828, 835 (1990), *cert.
denied,* 321 Md. 502, 583 A.2d 275 (1991) (same); *Brown v.
State,* 153 Md.App. 544, 558, 837 A.2d 956, 964 (2003), *cert.
denied,* 380 Md. 618, 846 A.2d 401 (2004) (holding that an eight
and a half month period from the date of mandate to the first
scheduled trial date "was necessary for the orderly adminis-
tration of justice and constituted a reasonable amount of time
to allow the State and the Defendant to prepare for trial").

### January 10, 2011 to May 18, 2011

■ This is the period commencing with Lloyd's removal
of the case to the circuit court and ending with the first trial
date in the circuit court. These four months and eight days
are chargeable to Lloyd. Judge Charles E. Orth, Jr., speak-
ing for the Court of Appeals in *State v. Gee,* 298 Md. 565, 471
A.2d 712 (1984), so stated in considered dicta.

In *Gee,* the State had filed a statement of charges in the
District Court against Gee on January 3, 1981, and obtained a
warrant for his arrest. The charges included the felony of
robbery with a deadly weapon. The warrant was not executed
until October 7, 1981, and, on November 2, 1981, an indictment
was returned. Gee argued that the issuance of the warrant
commenced formal charges against him and thereby started
the speedy trial clock running. Rejecting this argument, the
Court held that "when the defendant cannot be tried under

the warrant-statement of charges, he is not held to answer a criminal charge on the basis of that document. Its issuance does not mark the onset of formal prosecutorial proceedings to which the Sixth Amendment guarantee is applicable[.]" *Id.* at 574, 471 A.2d at 716.

The Court also considered the converse situation and said:

"As we have seen, under a 'warrant-statement of charges' charging only offenses under the jurisdiction of the District Court, the speedy trial clock starts to run upon the issuance of the warrant for it then constitutes a formal charge. *If the defendant removes the trial to a circuit court by praying a trial by jury, any normal delay in bringing him to trial by reason of the request would be, of course, chargeable to him.*"

*Id.* at 576–77 n. 7, 471 A.2d at 718 n. 7 (emphasis added). Here, Lloyd, by praying a jury trial, removed a case that was within the exclusive original jurisdiction of the District Court, and that delay is chargeable to him.

## May 18, 2011 to June 27, 2011

 This period of one month and nine days is measured from Lloyd's first scheduled trial date in the circuit court to the ultimate disposition of the charges. To the extent that this delay weighs against the State, it should do so lightly. *See Barker,* 407 U.S. at 531, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 117; *Glover,* 368 Md. at 225, 792 A.2d at 1168; *Brown,* 153 Md.App. at 557, 837 A.2d at 964; *Marks,* 84 Md.App. at 282, 578 A.2d at 835.

### Defendant's Assertion of his Right

" 'Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, *and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences.* The more serious the deprivation, the more likely a defendant

**332**

is to complain. The defendant's assertion of his speedy
trial right, then, is entitled to strong evidentiary weight in
determining whether the defendant is being deprived of
the right. We emphasize that failure to assert the right
will make it difficult for a defendant to prove that he was
denied a speedy trial.'

"*Barker*, 407 U.S. at 531–532, 92 S.Ct. at 2192–2193 [33
L.Ed.2d at 117] (emphasis added)."

*Bailey*, 319 Md. at 409–10, 572 A.2d at 552. *See also Kanneh*,
403 Md. at 693, 944 A.2d at 524 ("Kanneh, with the assistance
of counsel, acquiesced to each postponement until he objected
to the final postponement.... Because [he] ... failed to
object to any postponements until the very last postponement,
we weigh this factor against Kanneh and in favor of the
State[.]"); *Battle*, 287 Md. at 687, 414 A.2d at 1272 (defendant
made no assertion of his right until the morning of trial).

■ Here, Lloyd made a perfunctory motion for a speedy
trial in January 2011 as part of an omnibus motion in the
circuit court, and there was no further motion for a speedy
trial until the morning of June 27, 2011, before the court
accepted the parties' plea bargain. Lloyd did not object when
the scheduled trial was postponed. This factor weighs slightly
in Lloyd's favor. It is little more than the avoidance of
waiver.

### Prejudice

Lloyd asserts that because he was denied bail throughout
his pretrial incarceration, he was oppressively incarcerated
and unable to prepare his defense. The facts with respect to
bail are these.

Lloyd was held on charges in three criminal cases: the
subject case (No. 4650 in circuit court);[2] a case charging an
arson threat (No. 4651 in circuit court); and a violation of

---

2. In what became No. 4650 in the circuit court, the statement of
probable cause in the District Court averred that the victim "returned
to her residence where she discovered that almost the entire interior
portion of her residence had been destroyed by Bobby Lloyd."

probation case (No. 4590 in circuit court). The assault and malicious destruction of property charged in No. 4650 occurred five or six days after Lloyd had been placed on probation. The bail in No. 4650 was $100,000, the bail in No. 4651 was $100,000, and it was $50,000 in No. 4590. The $100,000 bail set in the subject case on October 15, 2010, on bail review in the District Court was the subject of a bail reduction hearing in the District Court on October 18, 2010. Bail remained unchanged with 100% acceptable following the hearing. The circuit court conducted two bail reduction hearings in Lloyd's cases, one on January 20, 2011, and the other on April 18, 2011. Neither resulted in any reduction.

At the January 20, 2011 hearing, the court explained:

"[T]hese acts are bizarre, they're scary, and they are very serious. The threat of arson, the malicious destruction of property ... and a second-degree assault as outlined by throwing a rock into the windshield of a car when someone is trying to flee is scary, and one can only start thinking about what was the intent on that day. ...

"Bail is to assure that the Defendant will show up in court, and to some extent, a collateral benefit to the safety of the public, at large. I'm going to hold this matter open for you to supply both [the State] and the Court with a mental health examination, some type of situation as to where he'd be living, and some comment concerning the person who was assaulted here that she feels comfortable that he's in the community, but ordered not to go near her home. This man was on probation to this Court and committed these acts, which are certainly bizarre. ... We're not changing anything right now."

On March 1, 2011, a further bail review hearing was scheduled for April 18, and the jury trial was set for May 18.

At the hearing on April 18, 2011, the court declined to accept Lloyd's proposal that the total bail in all three cases be set no higher than $10,000 or $20,000. The court concluded:

"[I]t's a very bizarre case, a very serious case, and [the case being scheduled for next month] ... the bond will remain

the same. [T]he purpose of bond is to secure the Defendant's appearance at trial, and to a lesser extent, but on a parallel plane, the safety of the public. It's very disturbing facts without explanation of more."

Lloyd's violation of probation charge was based upon his assault on the victim and destruction of her property within one week after having been placed on probation. Seemingly, he was less than a prime candidate for release on bail. Further, the court properly weighed public safety, including particularly the safety of the victim, against Lloyd's interest in pretrial release.

■■■ Of additional significance in the instant matter is that Lloyd's decision to pray a jury trial resulted in fifty percent of the pretrial confinement of which he now complains. Of the eight months and fifteen days from arrest to disposition, four months and eight days resulted from forgoing trial on January 10, 2011, in the District Court, excluding the delay resulting from the postponement of the May 18, 2011 initial trial date. Under these circumstances, we cannot say that the pretrial detention was oppressive.

Lloyd also asserts that he was prejudiced by the delay of his trial because a witness he wanted to call to testify on his behalf at his originally scheduled trial date in May 2011, Laron Davis (Davis), had been deployed to Afghanistan and was unable to be present at trial. The colloquy at the June 27 hearing between court and defense counsel regarding Davis's potential testimony developed the following:

● Davis was not an eyewitness to the assault or property damage.

● Davis had spoken by telephone to Lloyd on the day of the assault.

● Lloyd spoke to Davis about a paycheck[3] and could also testify to Lloyd's emotional state.

---

**3.** The record suggests that Lloyd sought to justify or mitigate smashing the window of the car occupied by the victim as an effort to recover a paycheck that was in the car.

- Davis was not among some fourteen persons who had been subpoenaed for trial.

- Davis had been available in January.

- Lloyd had not sought a continuance when Davis became unavailable.

- The first time that Davis's absence was advanced as a cause of prejudice to Lloyd was at the June 27 hearing on Lloyd's motion to dismiss.

The court found that defense counsel was prepared for trial and concluded that the significance of Davis's testimony did not rise to the level of dismissing the case because of his absence.

We hold that Lloyd has failed to show that he was prejudiced by Davis's absence.

On balance, the *Barker v. Wingo* factors do not weigh in Lloyd's favor. He was not denied a speedy trial.

**JUDGMENT OF THE CIRCUIT COURT FOR GARRETT COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**