Circuit Court for Anne Arundel County
Case No. 02-K-14-1626

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 713

September Term, 2016

BASHUNN PHILLIPS

v.

STATE OF MARYLAND

Meredith,
Graeff,
Leahy,

JJ.

Opinion by Leahy, J.

Filed: June 28, 2017

Bashunn Phillips ("Appellant") is charged with the first-degree murder of Shar-Ron Mason and related crimes. Phillips filed a motion *in limine* to exclude certain cell phone evidence in the Circuit Court for Anne Arundel County, and, on February 12, 2016, the court granted Phillips's motion. The State sought in banc review of the order granting Phillips's motion in the circuit court pursuant to the Maryland Constitution, Article IV, section 22, and Maryland Rules 4-352 and 2-551.

Phillips filed a motion to dismiss the State's request for in banc review for lack of jurisdiction. A three-judge panel sitting in banc denied the motion. In a written order and memorandum dated June 3, 2016, the panel found in favor of the State, thereby reversing the trial court's ruling. Phillips filed a notice of appeal of the in banc decision and presents the following questions for our review:[1]

> 1. "Did the three-judge panel lack appellate jurisdiction to review [the trial court's[2]] ruling?"
>
> 2. "Did the three-judge panel fail to identify any legal error in [the trial court's] ruling?"
>
> 3. "Did [the trial court] correctly conclude that the State's use of a drive test for the forensic purpose of pinpointing the location of a cell phone during a crime was not generally accepted in the relevant scientific community, as required by the *Frye-Reed* test for admissibility of expert testimony?"
>
> 4. "Did [the trial court] properly exercise [its] discretion under Maryland Rule 5-702 in ruling that the State's witnesses were not qualified to offer expert testimony about the use of drive tests for the forensic purpose of

---

[1] Phillips is still awaiting trial in the circuit court.

[2] For ease of reference, we will generally refer to the original circuit court judge as "the trial court" in this opinion to differentiate the trial court from the in banc panel of the circuit court.

pinpointing the location of a cell phone during a crime?"

The State has filed a motion to dismiss this appeal, arguing that this Court does not have appellate jurisdiction over the appeal filed by Phillips. We deny the State's motion.

We hold that the in banc panel lacked jurisdiction to review the trial court's grant of Phillip's motion *in limine* because it was an unappealable interlocutory order. Accordingly, we do not reach Phillips's remaining contentions. We vacate the panel's order, and remand the case with directions to reinstate the trial court's order and dismiss the appeal so that criminal proceedings may resume.

## BACKGROUND

### A. Indictment and Motion *in Limine*

On July 18, 2014, a grand jury indicted Phillips for the December 10, 2013 murder of Shar-Ron Mason. Phillips was charged with first-degree murder, second-degree murder, manslaughter, the use of a firearm in a felony, and the use of a firearm during a crime of violence. He was also charged with wearing, carrying, or transporting a handgun. Phillips was then arrested pursuant to a warrant.

The State notified Phillips that it intended to offer at trial a radio frequency ("RF") signal propagation map purporting to establish the approximate location of Phillips's phone on the morning of December 10, 2013. The propagation map represented data obtained through a drive test[3] conducted by Special Agent Richard Fennern, a member of the Federal

---

[3] According to the testimony offered at the underlying hearing on the motion *in limine*, the drive test is conducted by driving around a cell phone tower with a cell phone connected to a measuring device. This device measures the radio frequency emanating

2

Bureau of Investigation's Cellular Analysis and Survey Team, on October 23, 2014.

Phillips filed a motion *in limine* on August 7, 2015, seeking to exclude the RF signal propagation map and related testimony. Phillips argued that the method used to create the map was not generally accepted as reliable within the relevant scientific community under Maryland's *Frye-Reed* test for admissibility of evidence based on novel scientific methodology.[4] Phillips acknowledged that cell phone tower "ping" evidence is admissible, but drew a distinction between the method used to create the RF signal propagation map and the collection of historical cell phone "ping" evidence.[5] Phillips argued that a drive

_____

from the tower. The data is collected and then, using software, is represented in a map which shows the service coverage of the cell phone tower at a particular time.

The trial court described a drive test in its memorandum opinion:

> A drive-test is generally conducted by cell phone providers using either a scanner or test phone to measure the signal strength in order to determine the true coverage area for a particular cell tower and any gaps in their network. The person drives around a particular neighborhood and the JDSU equipment plots the latitude, longitude, and energy emitted by the cell tower at the location.

JDSU is an abbreviation for "JDS Uniphase Corporation," the company that creates the drive test software.

[4] Pursuant to Maryland's *Frye-Reed* test for the admissibility of scientific expert opinion, "before a scientific expert opinion may be received in evidence, the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular scientific field." *Wilson v. State*, 370 Md. 191, 203 (2002).

The test's name stems from *Reed v. State*, 283 Md. 374, 389 (1978), in which the Court of Appeals adopted the "general acceptance" rule for the admission of expert testimony set forth by the D.C. Circuit in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

[5] Cellular tower "ping" evidence is deemed reliable and is admissible without a *Frye-Reed* hearing. *See Stevenson v. State*, 222 Md. App. 118, 133 (2015).

3

test—in this case conducted ten months after the murder of Shar-Ron Mason—"is merely a snapshot in time that cannot give any reliable prediction of where [radio frequency] signals were or where they were going over time." "In order for the test to be reliable, conditions would have to be analogous to those that existed on [the date of the murder] such as but not limited to weather, time, volume of call traffic, and the state of the equipment in use by the cell phone company."

## B. *Frye-Reed* Hearing and the Trial Court's Opinion

The trial court heard arguments on Phillip's motion and conducted a *Frye-Reed* hearing over four days between September 24, 2015 and October 30, 2015. Phillips maintained that drive tests are routinely performed by cell phone companies to improve coverage and minimize "dropped calls," but that they are not generally accepted in criminal investigations. Testifying for the defense, William Folson, accepted as an expert witness "in the field of cellular technology and historical cell site analysis" explained that he "consider[s] [drive tests] a waste of time" because "[t]hey add no value to the historical analysis of a cell phone." He further testified that the manner in which Special Agent Fennern had performed the drive test was not accepted as reliable in the relevant scientific community. Mr. Folson explained that the RF signal range in December 2013 when the murder occurred would be different than the range in October 2014 when the drive test was conducted because the strength of RF signals fluctuate. Because of this, according to Mr. Folson, a drive test is not representative of the strength of the RF signals on any other date. He also pointed out that drive tests were not peer reviewed, accepted by the scientific community, or used in criminal investigations.

4

Providing a different opinion and testifying for the State, Special Agent Fennern was accepted as an "expert in the field of historical cell site analysis, cellular technology, and [] radio frequency drive testing for cell phone mapping." Agent Fennern opined that factors such as weather only have a "minimal" impact on radio frequency strength. He also testified that, relying on information provided by cell phone companies, the RF signal strength only varied by five or ten percent.

The State also offered the testimony of T-Mobile employee Stephen Willingham, accepted as an expert in radio frequency engineering. He testified that cell phone companies use drive tests for "competitive analysis reasons." He explained that when a customer complains about a missed call, a cell phone company will use a drive test to attempt to recreate that dropped call to identify a gap in service. Mr. Willingham testified that, over time, radio frequency "[f]ootprints remain consistent as long as nothing major has changed[,]" referring to the physical layout of the cell site, such as antennas and equipment. He stated that the maximum variation he had seen for a footprint was a quarter mile.

In a written memorandum and order dated February 12, 2016, the trial court granted Phillips's motion excluding the RF signal propagation maps and related expert testimony on drive tests. First, the trial court concluded that experts were required to testify on the drive test methodology. Next, the court concluded that law enforcement's use of drive tests for forensic purposes was novel and, thus, subject to the *Frye-Reed* reliability and admissibility standards. After determining that the digital forensic science field is the relevant scientific community, the court found that the State's experts lacked familiarity

5

with that field and were unable to produce studies or peer-reviewed articles in that field supporting the reliability or general acceptance of drive tests for forensic purposes. The court ultimately concluded that the State did not establish that drive tests as used by the FBI are generally accepted in the digital forensic science community. The court then mused that, even if the drive test were considered generally accepted and reliable, the State's experts were not qualified to testify because they were not members of the digital forensic science community and failed to satisfy the requirement of Maryland Rule 5-702.[6]

## C. In Banc Proceedings

### i. Article IV, § 22 and Maryland Rule 2-551

Displeased with the court's interlocutory order granting Phillips's motion *in limine*, on February 18, 2016, the State filed a request for in banc review of the trial court's order pursuant to the Maryland Constitution, Article IV, section 22, and Maryland Rules 4-352 and 2-551. To provide context for the parties' ensuing filings and arguments, we interpose the relevant text authorizing in banc review in the circuit courts.

Article IV, section 22, of the Maryland Constitution reads:

> Where any trial is conducted by less than three Circuit Judges, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon

---

[6] Maryland Rule 5-702 provides:

Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

motion, to have the point, or question reserved for the consideration of three Judges of the Circuit, who shall constitute a court in banc for such purpose; and the motion for such reservation shall be entered of record, during the sitting at which such decision may be made; and the procedure for appeals to the Circuit Court in banc shall be as provided by the Maryland Rules. The decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party at whose motion said points, or questions were reserved; but such decision in banc shall not preclude the right of Appeal by an adverse party who did not seek in banc review, in those cases, civil or criminal, in which appeal to the Court of Special Appeals may be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of the District Court, nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law.

Maryland Rule 2-551 provides in pertinent part:[7]

(a) **Generally.** When review by a court in banc is permitted by the Maryland Constitution, a party may have a judgment or determination of any point or question reviewed by a court in banc by filing a notice for in banc review. Issues are reserved for in banc review by making an objection in the manner set forth in Rules 2-517 and 2-520. Upon the filing of the notice, the Circuit Administrative Judge shall designate three judges of the circuit, other than the judge who tried the action, to sit in banc.

### ii. Motion to Dismiss

Phillips filed a motion to dismiss on February 24, 2016, arguing that the in banc panel was without jurisdiction to hear the appeal. Phillips reasoned that Maryland's

---

[7] Technically, Maryland Rule 2-551, standing alone, applies only to in banc review of *civil* cases, but Maryland Rule 4-352, applying to *criminal* causes, provides, in pertinent part, that "[i]n banc review of a circuit court's judgment or determination is governed by the provisions of Rule 2-551, except that the right of review does not apply to criminal actions exempted under the Maryland Constitution." The excerpt's last clause, referring to the Constitution's exemptions, is not applicable in the present case because it refers only to District Court actions and "criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary . . . ." Maryland Const. art. IV, § 22.

appellate courts have repeatedly recognized that Article IV, section 22, of the Maryland Constitution permits in banc review only when a direct appeal is allowed and the State had no statutory right to appeal the court's order. Phillips relied on decisional law holding that the standard for appealability to an in banc panel is the same as that to the Court of Special Appeals, including *Board of License Commissioners for Montgomery Cnty. v. Haberlin*, 320 Md. 399 (1990), *abrogated on other grounds by Bienkowski v. Brooks*, 386 Md. 516 (2005); *Dean v. State*, 302 Md. 493 (1985), *abrogated on other grounds by Bienkowski*, *supra*, 386 Md. at 516; and *Estep v. Estep*, 285 Md. 416 (1979), *abrogated on other grounds by Bienkowski*, 386 Md. at 516.

In response, the State argued, *inter alia*, that in banc review of a trial court decision was not an "appeal," but instead a "review," and that the Maryland Constitution provided a right to an in banc determination in this context. Specifically, the State argued that the plain, ordinary, and common meaning of the language of the Maryland Constitution expressly permits in banc review "upon the decision or determination of any point, or question, by the Court[.]" The State also maintained that Maryland Rule 2-551 is "straightforward" in that it provides that upon filing a notice for in banc review, the circuit administrative judge "shall designate three judges of the circuit court . . . to sit in banc." Therefore, the State argued, "the appointment of a panel is not discretionary, and is not dependent upon the movant first having to clear any sort of merits hearing."

The in banc panel denied Phillips's motion to dismiss on March 24, 2016, stating that it would reconsider the motion after oral argument.

8

### iii.    Further Proceedings and Final Order

The State filed a "Memorandum in Support of its Request for In Banc Review of [the trial court]'s February 12, 2016 Order Granting Defendant's Motion to Exclude Tangible Evidence and Testimony Regarding Cell Phone Drive Tests" on March 17, 2016. On the jurisdictional question, the memorandum restated verbatim the arguments relied upon by the State in its response to the motion to dismiss. On the merits, the State argued that (1) the trial court incorrectly permitted a *Frye-Reed* hearing because this scientific technique is not new or novel; (2) the trial court had incorrectly applied *Frye-Reed* because drive tests have widespread acceptance in the relevant scientific field; (3) the trial court erred by incorrectly and narrowly defining the relevant scientific community; and (4) the trial court erred in allowing Mr. Folson to testify as an expert.

Phillips filed a "Defendant-Appellee" brief in which he renewed his motion to dismiss, maintaining that: (1) appellate jurisdiction is defined by statute; (2) the right to an in banc appeal is coextensive with the right to appeal to a traditional Maryland appellate court; and, (3) the State had no statutory right to appeal the trial court's evidentiary ruling to this Court or the Court of Appeals. Specifically, Phillips maintained that Maryland Code (1973, 2013 Repl. Vol., 2016 Supp.), Courts and Judicial Proceedings Article ("CJP"), §§ 12-301 and 12-302 did *not* allow the State to appeal in this circumstance. Otherwise, in defense of the trial court's ruling, Phillips averred: (1) the trial court properly admitted Mr. Folson as an expert witness; (2) the trial court properly concluded that the drive test technique is not generally accepted under *Frye-Reed*; and (3) the trial court properly concluded that the State's experts lacked a sufficient factual background under Maryland

9

Rule 5-702(3) to testify.

At oral argument on May 17, 2016, the State persisted in its contention that the in banc panel had jurisdiction. The State asserted that the purpose of section 22 was to "allow quick informal reviews of . . . errors by trial judges[,]" and that the history of the 1864 Constitutional Convention indicated that § 22 "was meant to extend to instances where an appeal ordinarily would not lie[.]"

Phillips countered with the simple proposition that binding Court of Appeals precedent exists contrary to the State's position on the very same point. Phillips pressed that jurisdiction is not something the in banc panel can create on its own and that it is established by the Constitution and statutory provisions, neither of which permit appeal of the trial court's interlocutory order. Phillips also contended, on policy grounds, that recognizing in banc review of a grant of a motion *in limine* would open the floodgates to litigants requesting in banc review from all interlocutory orders.

On June 3, 2016, the in banc panel entered an order, concluding that it had jurisdiction to hear the State's appeal and that the trial court abused its discretion in its evidentiary rulings. Addressing the threshold jurisdictional question, the panel acknowledged that the State would be precluded from appealing the interlocutory order to this Court, yet concluded that it had jurisdiction to consider the State's appeal. The panel relied on *Berg v. Berg*, 228 Md. App. 266 (2016), in which we are purported to have "advocated for a broad interpretation of Art. IV, § 22, ultimately holding that a Petitioner could properly take an *in banc* appeal from a post-trial trial motion." The panel explained:

**In the instant case, this Panel believes that the case at hand is an**

10

**extraordinary instance in which the legislature failed to address the ability of the State to take an in banc [sic] from a[n] evidentiary determination amounting to both an abuse of discretion of the trial court and an error of law.** As previously stated, the State cannot proceed to the Court of Special Appeals, nor can the State take the normal route of an *in banc* appeal as delineated in *Haberlin*, because the situation does not fall within the constraints of § 12-301 & 12-302. **In this case, however, the Panel concludes that the language of Art. IV, § 22 of the Maryland Constitution, when read in conjunction with Md. Rules 4-353 and 2-551 and in light of the dicta included within *Berg*, shows the intention of the legislature to provide an avenue of review for situations akin to the case at hand.** As such, the Panel must look to the Maryland Constitution for guidance in the procedural manner in which this matter is to advance.

(Emphasis added; italics in original).

On the merits, the in banc panel concluded that the trial court abused its discretion by conducting a *Frye-Reed* hearing and excluding the drive test evidence. The panel also concluded that the State's witnesses, Special Agent Fennern and Mr. Willingham—as well as Phillips's witness, Mr. Folson—were qualified to testify as experts.

Phillips noted an appeal to this Court on June 13, 2016.

## DISCUSSION

### I.

### The State's Motion to Dismiss

As previously mentioned, the State filed a motion to dismiss in this Court, arguing that Phillips lacks the statutory authority to appeal an evidentiary ruling before a trial has been conducted. The State contends that this appeal is an interlocutory appeal not subject to any delineated exception to the final judgment rule. The State further maintains that an order of an in banc panel is only as final as the judgment that it reviews, and that, the proper avenue for Phillips to take is to appeal *after* the trial, if he is convicted, at which point he

11

may present argument concerning any grievances he had with the in banc panel's decision.[8]

Phillips counters that the decision of an in banc panel is a final, appealable judgment. Phillips argues that a court in banc is one acting as an appellate tribunal and that the decisions of such an appellate tribunal are reviewable as final judgments.

Two appellate decisions, *Buck v. Folkers*, 269 Md. 185 (1973), and *Estep*, *supra*, are dispositive on the issue as to whether we have jurisdiction in the present case. In *Buck*, the Court of Appeals explained that "[t]he decision of the court en banc is conclusive, final, and non-appealable by the party who sought the en banc review (the moving party)." 269 Md. at 186 (citations omitted). In that case, Folkers filed a petition for declaratory relief against Buck in the circuit court. *Id.* at 187. On December 30, 1971, the circuit court entered an order in favor of Buck, at which point Folkers appealed to the court in banc. *Id.* On April 26, 1972, the in banc panel filed an opinion remanding the case for a new trial because of an error it perceived in the admission of evidence. *Id.* A different circuit court judge then held a new trial on October 2, 1972, which resulted in an entry of judgment in favor of Folkers on October 13, 1972. *Id.* Buck appealed, presenting questions relating only to alleged errors by the in banc panel. *Id.* The Court of Appeals stated that,

> [w]hile Buck, as the adverse party, was entitled under Article IV, s 22 to appeal from the en banc determination, the order for such an appeal, to be timely, must have been filed within thirty days after April 26, 1972. Since it was not, we cannot take cognizance of the questions presented. There being no other questions before us, we dismiss the appeal.

---

[8] The State also observes, without noticing the apparent irony, that the purpose of the final judgment rule is "to prohibit piecemeal disposition of litigation." (Citing *Jolley v. State*, 282 Md. 353, 356 (1978)).

*Id.* at 187-88 (internal citations omitted).

Thus, the proper time to appeal a decision of an in banc panel is directly after the decision of the in banc panel. A party who waits to appeal until after remand and final judgment by the circuit court loses the ability to argue those points decided by the in banc panel. *See id.* This is contrary to the State's contention, just mentioned, that Phillips must wait until *after* a trial and verdict to offer any allegations of error concerning the in banc panel's decision.[9] In fact, if Phillips were to follow the State's advice and wait until a full trial, verdict, and appeal to this Court, he would be foreclosed from offering argument concerning the decision of the in banc panel, as per the stricture from *Buck. See id.*

*Estep*, 285 Md. at 416, is also instructive here. In that case, Ms. Estep filed a petition for modification of a governing custody order for her four children against her former husband, Mr. Estep, in the Circuit Court for Prince George's County. *Id.* at 418–19. In response, Mr. Estep argued that, under the Uniform Child Custody Jurisdiction Act ("UCCJA"), the circuit court chancellor was without jurisdiction to grant Ms. Estep's modification and, also, that Prince George's County was an inconvenient forum to litigate the case. *Id.* at 419. Mr. Estep also filed a cross-petition for modification of the governing

---

[9] Specifically, the State posits that "if after a trial, Phillips still feels aggrieved by the ruling, he may present it (along with any other complaints) to this Court on direct appeal." The State contends that

> Phillips has not been forever denied an opportunity to contest the merits of the panel's decision. If he is tried and convicted, he may, on direct appeal, contest whether the State should have been allowed to present its expert testimony. But at this stage of the proceedings, he has no right to contest that ruling.

13

custody order, seeking child support contributions from Ms. Estep. *Id.*

The chancellor dismissed Ms. Estep's petition with regard to the three youngest children,[10] finding that the court was without UCCJA jurisdiction to hear the case and, further, that Prince George's County was an inconvenient forum to hear the case. *Id.* On the same day, Ms. Estep sought in banc review of the chancellor's order. *Id.* The court in banc reversed the decision on April 26, 1978, even though Mr. Estep's cross-petition for support and Ms. Estep's motion for modification of custody regarding the eldest son remained pending in the circuit court. *Id.* Mr. Estep then appealed to this Court, which dismissed the case, stating that the appeal "was 'not allowed by law[,]'" without providing further explanation for its reasoning. *Id.* at 420 and n.3.

> After granting certiorari, the Court of Appeals reversed this Court and instructed:
>
> If, as petitioner has suggested, the Court of Special Appeals dismissed the appeal to it as interlocutory because the court in banc, after reversing the circuit court's decision, remanded the case for further action on the respondent's petition for modification, such a ruling by the Court of Special Appeals would be in error. **In holding that a nonmoving party's appeal from the decision of a court in banc to grant a new trial would be timely only if it were made immediately, rather than after the new trial was conducted, this Court in *Buck v. Folkers*, 269 Md. 185, 187-88, 304 A.2d 826, 828 (1973), clearly indicated that the court in banc acts only as an appellate tribunal so that its decisions are not those of a reconsidering trial court but are reviewable as final appellate judgments. Thus, we find no grounds for the dismissal by the Court of Special Appeals of the petitioner's appeal and will reverse that action.**

*Id.* at 420-21 (emphasis added) (footnote omitted).

Nonetheless, the Court did not reach the substantive merits of the case. *Id.* at 421-

---

[10] The eldest son lived with Ms. Estep in a different location than the three other children. *Estep*, 285 Md. at 418.

22. The Court concluded that the in banc panel below had no jurisdiction because the in banc panel was reviewing a decision that was not a final judgment. *Id.* at 421-23. The Court observed that several claims in the original circuit court action were unresolved, including Ms. Estep's motion for modification of the custody order for the eldest son, and Mr. Estep's cross-petition for child support, and concluded that the order appealed to the court in banc was not a final judgment and was, thus, appealed prematurely. *Id.* at 423. The Court then remanded the case back to the original circuit court. *Id.* at 424. *Estep*, therefore, directs that: (1) a decision of an in banc panel is appealable to a higher Maryland appellate court, (2) only final judgments or otherwise appealable orders may be appealed to an in banc panel, and (3) the Court of Appeals or Court of Special Appeals should remand the case back to the circuit court if a non-appealable order is appealed from a circuit court to an in banc panel.[11] *Id.* at 420-24; *see also Dabrowski v. Dondalski*, 320 Md. 392,

---

[11] We note that in *Bienkowski*, the Court of Appeals, for the first time, addressed "whether Article IV, § 22, of the Maryland Constitution precludes the Court of Special Appeals from exercising jurisdiction over an 'appeal' from a court in banc taken by the party who was an appellee in the court in banc." *Bienkowski*, 386 Md. at 523. At the time of that case, section 22 did not mention the "Court of Special Appeals" by name because the constitutional provision preceded the creation of our Court in 1967.

In *Bienkowski*, the plaintiff Bienkowski filed a survival and wrongful death action for his wife's death against Brooks in circuit court. *Id.* at 524. The jury returned a verdict in Bienkowski's favor, but the damages were less than he desired. *Id.* at 524–26. Bienkowski sought a new trial only on the issues of damages, which the circuit court denied. *Id.* at 526. Bienkowski then sought an appeal by an in banc panel of the circuit court. *Id.* at 528. The in banc panel reversed the trial court's denial of Bienkowski's motion for a new trial on the issue of damages, and ordered such a trial. *Id.* at 529. Brooks then appealed to this Court, which reversed the judgment of the in banc panel and remanded the case to the trial court with instructions to enter a judgment in accordance with the jury verdict. *Id.* Bienkowski filed a petition for certiorari in the Court of Appeals seeking review of the merits. The Court, *sua sponte*, raised the issue of this Court's jurisdiction. *Id.* at 530-31. After review of the legislative history of Article IV, § 22, of the Maryland

393-96 (1990) (per curiam) (explaining that an in banc panel's order of a new trial and reversal of a circuit court's decision constituted a final, appealable order), *abrogated on other grounds by Bienkowski*, *supra*, 386 Md. at 516.

The cases are clear. A court in banc acts as an appellate tribunal, and its decisions "are reviewable as final appellate judgments." *Estep*, 285 Md. at 421 (footnote omitted) (citing *Buck*, 269 Md. at 187–88). A party who did not seek in banc review may appeal the decision of the in banc panel because "such decision in banc shall not preclude the right of Appeal by an adverse party who did not seek in banc review, in those cases, civil or criminal, in which appeal to the Court of Special Appeals may be allowed by law." Maryland Const. art. IV, § 22.

In the present case, Phillips timely appealed from the decision of an in banc panel of the circuit court exercising appellate review. Phillips did not seek in banc review; the State did. Therefore, this Court has jurisdiction over the in banc panel's decision because it is a "final appellate judgment." *Estep*, 285 Md. at 421 (footnote omitted); *see also Buck*,

---

Constitution, *id.* at 531–44, and the Maryland's three-level system of trial and appeals, *id.* at 543-44, the Court held that the in banc review was in lieu of appellate review by this Court and that this Court "lack[ed] authority to exercise jurisdiction over the merits of appeals from in banc courts[.]" *Id.* at 531, 543-44. The Court further held that the only judicial review available to either party after an appeal to an in banc panel is to file a writ of certiorari to the Court of Appeals. *Id.* at 549.

In 2006, section 22 of Article IV of the Maryland Constitution, was amended to provide appeals to the Court of Special Appeals "by an adverse party who did not seek in banc review." 2006 Md. Laws, ch.421 (H.B. 84); Maryland Const. art. IV, § 22. Thus, at present, this Court has jurisdiction over cases properly appealed from an in banc panel of the circuit court.

16

269 Md. at 187–88. We deny the State's motion to dismiss.[12]

## II.

### Appeal of a Motion *in Limine*

Our denial of the State's motion to dismiss does not, however, end our jurisdictional inquiry. We now consider whether the in banc panel had jurisdiction to hear the State's appeal of the trial court's evidentiary ruling in the first instance.[13]

### A. The Parties' Contentions

The parties largely repeat the arguments presented during the proceedings before the in banc panel. Phillips observes that appellate jurisdiction is defined by statute and maintains that the State would have no right to appeal under CJP § 12-301—which provides that a party may generally appeal only from a final judgment—because the trial court's evidentiary ruling was not a final judgment. Phillips then asserts that the State had no right to appeal under CJP § 12-302—which gives the State the ability to take an interlocutory appeal when the State's evidence is excluded due to violation of the United

---

[12] The State cites *State v. Taylor*, 371 Md. 617 (2002), and *In re Kevin E.*, 402 Md. 624 (2008), for the proposition that Phillips may not appeal the decision of the three-judge panel, regardless of "[w]hether the three-judge panel had authority or not." Those two cases did not address in banc panels and instead addressed situations in which a trial court had committed an error, but the Court of Appeals was powerless to remand with instructions to retry the case, due to double jeopardy. *Kevin E.*, 402 Md. at 639–40; *Taylor*, 317 Md. at 654. We fail to divine how these two cases inform the situation at hand.

[13] We would have addressed the issue even if Phillips had not raised it, for "[w]hen a court in banc or other intermediate appellate court has exercised jurisdiction over an appeal, the question of whether it should have exercised jurisdiction is an issue which [a Maryland appellate court] shall address sua sponte when the case reaches [it]." *Haberlin*, *supra*, 320 Md. at 405 n.4 (citations omitted).

17

States Constitution or the Maryland Constitution or Declaration of Rights—because, in the present case, the evidence was excluded under *Frye-Reed* and Maryland Rule 5-702. Phillips claims the in banc panel "reached the merits of the appeal in order to justify reaching the merits" and that the panel incorrectly divined legislative intent and misinterpreted Maryland decisional law.

The State recognizes that its argument is contrary to the holding in *Estep*. Nonetheless, the State maintains that the plain language of the constitutional provision, specifically, the phrase "upon the decision or determination of **any point, or question,**" provides it a right to a review from an in banc panel of the circuit court in precisely this circumstance. *See* Maryland Const., art. IV, § 22 (emphasis added). The State further maintains that Article IV, section 22, gives the Court of Appeals the right to adopt rules governing the procedure for in banc appeal, but that neither courts nor the legislature can delimit the original right to appeal. The State claims that there is a distinction between a traditional appeal and in banc review and broadly argues that an in banc panel may review many points of law of a trial court, prior to a final judgment from the trial court. The State maintains that "the root of the misinterpretation" in the relevant Court of Appeals cases— including *Estep* and *Dean*, *supra*—"lies in the Court's sometimes imprecise references to *Buck*[.]" Finally, the State concedes that it is unlikely that it would have the right to appeal the trial court's evidentiary ruling to this Court under CJP § 12-302(c), but it states that it "is not 'appealing' the motion court's ruling[.]"

In its reply brief, Phillips notes that the State conceded that it had no statutory right to appeal under CJP § 12-302 and, further, that a court cannot rule on the merits in order

18

to determine it has the ability to rule on the merits, as the in banc panel did in the present case. Phillips further observes that section 22 states that it is "'subject to such provisions as may hereafter be made by law[,]'" which allows the legislature to circumscribe the right to appeal through such enactments as CJP § 12-301. (Quoting Maryland Const., art. IV, § 22). Phillips adds, in response to the State's argument suggesting that the Court of Appeals incorrectly decided cases on this point, that we "[are] not at liberty to reinterpret § 22 in a manner inconsistent with the decisions of the higher court." Finally, Phillips reasserts the policy argument that, if we were to allow this appeal to proceed, the "circuit courts would be inundated with requests for in banc reviews of virtually every type of interlocutory ruling[,]" contending that these "piecemeal appeals would clog up dockets, making it difficult for already-overburdened courts to guarantee speedy trials."

## B. In Banc Review

Judge J. Dudley Digges, writing for the Court of Appeals, offered the following commentary on section 22 and in banc review:

> Although the reason for section 22's inclusion in the constitution is not altogether clear, it appears to have been, as its commonly recognized nickname of "the poor person's appeal" suggests, a response to a fear of the framers of the Constitution of that year that the distance to Annapolis and the concomitant delay and expense incident to prosecuting an appeal in the Court of Appeals would discourage or preclude many litigants from seeking justice by means of appellate review.[14]

---

[14] But, in an article, John J. Connolly argues that, although the "poor person's appeal" rationale has some logic, the provision was "likely . . . intended as part of a compromise between a one-judge and three-judge system . . . and [] it surely was intended to serve the purposes of the three-judge judiciary without demanding all of the attendant expenses." John J. Connolly, Comment, *Maryland's Right of In Banc Review*, 51 Maryland L. Rev. 434, 438-59 (1992). In any event, Connolly points out, the members of the 1867 Constitutional Convention decided that they did not desire to spend the $2.50 a day

*Washabaugh v. Washabaugh*, 285 Md. 393, 396 (1979) (citation omitted).

Section 22 survives today in much the same form as it did in 1867. *See Berg*, 228 Md. App. at 272–75 (tracing the history of the minor amendments of the language of Article IV, section 22, over the course of the 150 years since the adoption of the Maryland Constitution of 1867). It still provides litigants, 150 years later, the right to appeal circuit court judgments to three-judge circuit court panels in certain circumstances. We next examine the contours of the right, contained in section 22, to appeal to an in banc panel.[15]

## C. Appellate Jurisdiction of an In Banc Panel

The Court of Appeals concisely described the role and purpose of in banc review in *Haberlin*. 320 Md. at 406-07. The in banc panel "functions 'as a separate appellate tribunal, and not merely as an arm of the trial court.'" *Id.* at 406 (other citations omitted) (quoting *Montgomery Cnty. v. McNeece*, 311 Md. 194, 201 (1987)). "The purpose of the constitutional provision authorizing an in banc appeal was to provide a substitute or alternate for an appeal to the Court of Appeals or, in recent years, to the Court of Special Appeals." *Id.* (other citations omitted) (citing *McNeece*, 311 Md. at 198, 201). Therefore,

> . . . when no appeal from a circuit court order could be taken to the Court of

---

required for a professional reporter; thus, there is no transcript of the proceedings, and the precise reason for the inclusion of section 22 has been lost to history. *See id.* at 443-44.

[15] Although, as stated *supra*, we do not reach the merits of this case because the State took an improper appeal to the in banc panel, we do note that, were we to reach the merits, we would be reviewing the decision of the trial court, not the decision of the in banc panel, contrary to the State's arguments concerning the requisite standard of review. *See Hartford Fire Ins. Co. v. Sanders*, 232 Md. App. 24, 38-42 (2017) (explaining that this Court reviews the decision of the trial court, not the decision of the in banc panel and affords any requisite deference to the trial court's decision).

Special Appeals (or, prior to the 1970's, the Court of Appeals), then no appeal can be taken to a court in banc. Generally, an appeal under § 12-301 of the Courts and Judicial Proceedings Article must be authorized in order for a court in banc to exercise jurisdiction. *Dean v. State*, 302 Md. 493, 497-498, 489 A.2d 22 (1985); *Estep v. Estep*, *supra*, 285 Md. at 422-424, 404 A.2d at 1043-1045. *See Liquor Board v. Handelman*, *supra*, 212 Md. at 161, 129 A.2d at 83. As Judge J. Dudley Digges pointed out for the Court in the *Estep* case, "we look to the pertinent enactment [conferring appellate jurisdiction] to determine the scope of the court in banc's basic authority to act. The applicable statute is section 12-301 of the . . . Courts [and Judicial Proceedings] Article," 285 Md. at 422, 404 A.2d at 1043.

320 Md. at 406-07 (alteration in *Haberlin*).

Clearly, the jurisdiction of the in banc panel is determined by the Maryland Constitution and the Maryland Code.[16] Maryland Rule 2-551 sets forth the appellate procedures for a party seeking review by the in banc panel and is consistent with the notion that such an appeal is an alternative to an appeal to this Court. Subsection (h) provides, in pertinent part: "Any party who seeks and obtains review under this Rule has no further right of appeal. The decision of the panel does not preclude an appeal to the Court of Special Appeals by an opposing party who is otherwise entitled to appeal."

The Court of Appeals has consistently held, upon examination of section 22 and the corresponding Maryland Rules, that a litigant may not appeal to an in banc panel when the litigant could not note an appeal to this Court successfully. *See, e.g.*, *Haberlin*, 320 Md. at 403; *Dean*, 302 Md. at 496-97. We now summarize and explain these cases.

In *Dean*, a jury convicted Dean of multiple felonies, whereupon the circuit court granted his motion for a new trial. 302 Md. at 494. The State then noted an in banc appeal,

---

[16] We have set out the text of Article IV, section 22, of the Maryland Constitution in full, *supra*.

21

claiming an abuse of discretion by the court in granting a new trial. *Id.* at 494-95. The in banc panel vacated the order and reinstated the convictions for the reason that the court did not provide precise findings as to its reason for the grant of a new trial. *Id.* at 496.

Upon granting certiorari, the Court of Appeals stated that "[t]here is no different standard[]" "of appealability to a court in banc from that to the Court of Special Appeals." *Id.* at 497. The Court explained that normally a final judgment is required before a party may appeal to the Court of Special Appeals pursuant to CJP § 12-301. *Id.* The Court concluded that "[i]t [wa]s clear that the order from which the State sought to appeal in th[at] case was not an appealable final order and thus the in banc court was without jurisdiction to consider the point reserved." *Id.* at 499 (footnote omitted). Thus, *Dean* stands for the proposition that a litigant may not appeal to an in banc panel in the circuit court if the litigant cannot also note an appeal to this Court successfully. *Id.* at 496-97.

In *Dabrowski*, the respondent brought an action against Dabrowski & Son Funeral Home after falling on the funeral home's premises. 320 Md. at 393. The circuit court granted a motion for judgment in favor of Dabrowski. *Id.* After respondent's timely motion for a new trial was denied, respondent filed an *untimely* request for review by an in banc panel. *Id.* The in banc panel reversed the trial court and ordered the case be set for a new trial. *Id.* at 394. The petitioner, Dabrowski, then timely filed an appeal to the Court of Special Appeals. *Id.* This Court dismissed the appeal on the grounds that the order by the in banc panel was not a final appealable judgment. *Id.* After granting certiorari, the Court of Appeals reversed this Court and held that the order by the in banc panel was a final appealable order under CJP § 12-301. *Id.* at 395. The Court cited *Estep* for the

22

proposition that a "court in banc acts only as an appellate tribunal so that its decisions are not those of a reconsidering trial court but are reviewable as final appellate judgments." *Id.* at 396 (quoting *Estep*, 285 Md. at 421). The Court then vacated the Court of Special Appeals' dismissal and vacated the in banc panel's order, holding that the in banc panel of the circuit court lacked jurisdiction because the respondent's request for in banc review was untimely. *Id.* at 397. The Court reminded us that "timeliness of an order of appeal is 'jurisdictional,' and that if an appeal is not filed within the prescribed time, 'the appellate court acquires no jurisdiction and the appeal must be dismissed.'" *Id.* at 398 (quoting *Walbert v. Walbert*, 310 Md. 657, 662 (1987)) (some internal quotation marks omitted).

In *Haberlin*, decided on the same day as *Dabrowski*, the Court of Appeals reached a similar result. 320 Md. at 403 (citations omitted). In that case, respondents—Haberlin and Plotnick—opposed a liquor license application filed by a competitor. *Id.* at 401. After the Board of License Commissioners granted the license, the respondents sought judicial review in the circuit court. *Id.* The circuit court dismissed the action on the grounds that respondents—competing licensees—lacked standing to request judicial review. *Id.* at 402. When the court denied respondents' motion to alter or amend the judgment, the respondents sought in banc review. *Id.* The in banc panel concluded that the competing licensees had standing to seek judicial review, reversed the court's judgment, and remanded the case for additional proceedings. *Id.* at 402-03. The Board then sought an appeal in this Court; however, before we heard the case, the Court of Appeals issued a writ of certiorari. *Id.* at 403. The respondents moved to dismiss the appeal, contending that the judgment of the in banc panel was not final and appealable because the judgment did not

23

terminate the circuit court proceedings. *Id.* The Court reiterated *Dabrowski*'s holding that a judgment of an in banc panel of the circuit court is final and appealable to this Court. *Id.*

Next, the Court stated that the purpose of the constitutional provision authorizing in banc review was to provide an alternative to an appeal to this Court, but, this alternative method of appeal must be authorized by statute in order for an in banc panel to assert jurisdiction. *Id.* at 406-07. The Court explained:

> In a majority of circuit court cases, an appeal from a final judgment to the Court of Special Appeals is authorized by [CJP] § 12-301 [], and there are no other statutory provisions limiting or modifying the right of appeal under § 12-301. As to these ordinary cases, Art IV, § 22, of the Constitution and Rule 2-551 provide an alternate avenue of appeal to a court in banc.

*Id.* at 407. The Court reaffirmed its holding from prior cases that "*when no appeal from a circuit court order could be taken to the Court of Special Appeals* (or, prior to the 1970's, the Court of Appeals), *then no appeal can be taken to a court in banc.*" *Id.* (emphasis added) (citations omitted). Thus, a litigant may only appeal an order from a circuit court to an in banc panel if that litigant could appeal the same order in this Court.[17] *Id.*

Applying these precepts to the case before it, the *Haberlin* Court held that an appeal to an in banc panel in the circuit court was inconsistent with the legislative purpose of the then-existing statute addressing appellate review of the liquor board's decisions. *Id.* at 409.

---

[17] In *Haberlin*, the Court also explained that there are statutory provisions providing for direct appeals to the Court of Appeals, such as in death penalty cases (formerly), contested election cases, and habeas corpus cases in which the circuit court judge held unconstitutional the law in which the habeas applicant was convicted. 320 Md. at 407-08. The Court explained that these types of extraordinary cases (and statutory provisions), along with discretionary Court of Appeals review of appeals in the circuit court of cases originating in the District Court, "embod[ied] a legislative intent that is inconsistent with an alternate appeal from a circuit court to a court in banc." *Id.* at 408.

24

The statute expressly stated that the board's decisions are final and not appealable except to resolve conflicting trial court decisions on a legal issue. *Id.* Accordingly, the in banc panel lacked jurisdiction over the appeal, and the Court of Appeals vacated the in banc panel's judgement with instructions to dismiss the appeal. *Id.* at 409-10.[18]

The State directs us to *Berg*, *supra*, 228 Md. App. at 266.[19] In that case, Mr. Berg filed a complaint for divorce in 2005, and the circuit court held a merits trial in 2007 in which the court awarded a $450,000.00 monetary judgment to Ms. Berg. *Id.* at 269-70. Although Mr. Berg made irregular payments over the next seven years, he never satisfied the judgment, and in 2014, Ms. Berg brought a separate garnishment action. *Id.* at 270. In the garnishment action, Mr. Berg objected to the manner in which Ms. Berg had applied his payments to interest, rather than principal. *Id.* The circuit court then held an evidentiary hearing and entered an order, agreeing in part with Mr. Berg. *Id.* at 270-71. After Ms. Berg's timely motion to alter or amend the judgment was filed and denied, she noted an in

---

[18] The State contends that the legislature cannot by statute define the right to appeal to an in banc panel because that right springs from the Constitution. We set out the final paragraph of *Haberlin* to dispose of this argument:

> Therefore, we hold that Art. 2B, § 175(f), prohibits an appeal to a court in banc. As Art. IV, § 22, of the Constitution provides that the right to an in banc appeal "shall be subject to such provisions as may hereafter be made by Law," the General Assembly is entitled to preclude an in banc appeal in specific situations. It did so in the present case.

320 Md. at 409-10.

[19] The in banc panel in the present case also relied on *Berg*, stating in its opinion that "the Court of Special Appeals recently advocated for a broad interpretation of Art. IV, § 22" in that case.

banc appeal, and Mr. Berg contested jurisdiction. *Id.* at 271. The in banc panel ruled that it had jurisdiction and entered an order reversing the circuit court. *Id.* Mr. Berg appealed to this Court, arguing that the in banc panel lacked jurisdiction for the reason that in banc appeals could only be taken from merits trials, not from issues arising long after the merits trial had been held. *Id.* at 269. Mr. Berg contended that the phrase "any trial is conducted" found in Article IV, section 22, of the Maryland Constitution limited in banc appeals to errors occurring during a "merits trial." *Id.* at 276.

Relying on *Dean*, *Haberlin*, and the provision in section 22 which allows in banc appeals "upon the decision or determination of any point, or question . . . [,]" we held that "in banc appeals from post trial decisions . . . by less than three judges are allowed." *Id.* at 279 (quoting Maryland Const., art. IV, § 22). We interpreted the word "trial" used in section 22 of Article IV "as meaning 'that step in an action by which issues or questions of fact are decided.'" *Id.* at 281 (quoting *Miller v. Tobin*, 18 F. 609, 616 (D. Or. 1883)). Applying this definition, we concluded that a trial was held when the circuit court held an evidentiary hearing on the garnishment action and decided, based on evidence, how Mr. Berg's payments should be applied. *Id.* at 281-82. In the present case, we conclude the court's four-day *Frye-Reed* hearing, in which testimony and evidence was presented and the court made determinations, meets this definition of a "trial."[20]

---

[20] In this appeal we do not decide the issue left open in *Berg*, when Judge Salmon, writing for this Court, recognized the possibility that there could be a case that was appealable to this Court—yet not appealable to an in banc panel—because no "trial" within the meaning of section 22 had yet been conducted, for example, a final judgment granting a motion to dismiss for failure to state a claim. *See* 228 Md. at 282-83. Phillips notes this

26

We do not agree, however, with the interpretation of *Berg* urged by the State endorsing a sweeping right of in banc review that would include the right to appeal the grant of the motion *in limine* in the present case. First, in *Berg* we cited and relied on *Dean* and *Haberlin*, two cases holding that—as stated *supra*—the right to in banc review and the right to appeal to this Court are coextensive. *Berg*, 228 Md. App. at 278. Second, *Berg* was addressing a *post*-trial motion, *id.* at 279, and the order the State appealed from in the present case is a *pre*-trial motion.[21]

Given that a party may appeal to an in banc panel only when it has an appeal to this Court, we turn to the relevant statutes addressing this Court's jurisdiction. Generally, CJP § 12-301 provides that a final judgment is a prerequisite before a party may appeal.[22] The

---

in his brief, urging "that in banc review might actually be more limited than direct appeal." We leave this question for another day.

[21] We observe, with the disclaimer that we do not have the full record in the *Berg* case before us, that Ms. Berg's motion to alter or amend the garnishment judgment was likely a final judgment under CJP § 12-301 from which Ms. Berg could have appealed to this Court because "[a] garnishment of a judgment debtor's property has 'many of the attributes of a separate cause of action[.]'" *See Mayor & City Council of Baltimore v. Utica Mut. Ins. Co.*, 145 Md. App. 256, 265, 274-77 (2002) (quoting C. Brown, Introduction to Maryland Civil Litigation, § 6.34, 200–201 (1982)).

[22] The parties do not dispute this, but, in the interest of completeness, we take a moment to point out that the trial court's *Frye-Reed* ruling in the present case was clearly not a final judgment. *Rohrbeck v. Rohrbeck* provides the signature Maryland definition of the three attributes of a final judgment:

> (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2-602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2-601.

statute states, in pertinent part, that:

> Except as provided in § 12-302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law.

Here, the trial court's grant of Phillips's motion *in limine* was not a final order. However, CJP § 12-301 also includes exceptions to its final judgment rule. CJP § 12-302(c)(3)(i) is one such exception. Its text reads, in pertinent part:

> In a case involving a crime of violence . . ., the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property *alleged to have been seized in violation of the Constitution of the United States, the Maryland Constitution, or the Maryland Declaration of Rights.*

(Emphasis added).[23]

---

318 Md. at 41. *See also* Kevin F. Arthur, Finality of Judgments and Other Appellate Trigger Issues (2014).

"In a basic sense, 'a final judgment consists of a verdict [in a criminal case] and either the pronouncement of sentence or the suspension of its imposition or execution.'" *Hoile*, 404 Md. at 612 (alteration in *Hoile*) (quoting *Lewis v. State*, 289 Md. 1, 4 (1980)). Phillips has not yet received a trial, nor has a verdict been reached in his case; thus, the trial court's ruling on the motion *in limine* plainly does not satisfy the first two of these requirements from *Rohrbeck*. *See Hoile*, 404 Md. at 612; *Rohrbeck*, 318 Md. at 41.

[23] CJP § 12-302(c)(1) and (2) actually *limit* the State's ability to appeal as to certain final judgments. The text of those subsections provides:

> (c)    (1) In a criminal case, the State may appeal as provided in this subsection.
>
> (2) The State may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition.
>
> (3) The State may appeal from a final judgment if the State alleges that the trial judge:
>
> (i) Failed to impose the sentence specifically mandated by the Code; or

Before this Court the State concedes that CJP § 12-302(c) provided the State no right to appeal the trial court's evidentiary ruling to the Court of Special Appeals. The trial court excluded the State's evidence pursuant to *Frye-Reed* and Maryland Rule 5-702, not on federal or Maryland constitutional grounds. If the trial court had based its ruling on federal or Maryland constitutional principles, then CJP § 12-302 would have provided the State with a right to appeal to this Court or an in banc panel of the circuit court.

Once again, the case law is unambiguous that "when no appeal from a circuit court order could be taken to the Court of Special Appeals . . . , then no appeal can be taken to a court in banc." *Haberlin*, 320 Md. at 407; *accord Remson v. Krausen*, 206 Md. App. 53, 65-66 (2012). In the present case, the order the State appealed from was not a final judgment because there was no verdict, *see Hoile v. State*, 404 Md. 591, 612 (2008), it was not "intended by the court as an unqualified final disposition of the matter in controversy," and it did not "adjudicate or complete the adjudication of all claims against all parties[.]" *See Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989). The trial court's order was also not an interlocutory order nonetheless appealable under one of the exceptions catalogued in CJP § 12-303.[24]

Because the State had no right to appeal from the trial court order granting Phillips's motion *in limine*, the in banc panel was without jurisdiction. Accordingly we do not reach

---

(ii) Imposed or modified a sentence in violation of the Maryland Rules.

[24] None of the exceptions set out in CJP § 12-303, which provides for the lion's share of the interlocutory orders from which an appeal may be taken—and applies only in civil cases—are applicable to the case at hand.

the merits of the case.  *See Estep*, 285 Md. at 423-24 (declining to reach merits when in banc panel improperly exercised jurisdiction and remanding for further proceedings).  We vacate the in banc panel's June 3, 2016 order and remand with instructions to remand the case back to the trial court.

**JUNE 3, 2016 ORDER OF THE IN BANC PANEL VACATED.  CASE REMANDED TO THE IN BANC PANEL OF THE CIRCUIT COURT WITH DIRECTIONS TO REINSTATE THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY'S FEBRUARY 12, 2016 ORDER, DISMISS THE APPEAL, AND REMAND TO THE CIRCUIT COURT.**

**COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.**