*Bashunn Phillips v. State*, No. 3245, September Term, 2018.  Opinion by Kenney, J.

**CRIMINAL LAW – TIME OF TRIAL – DECISIONS SUBSEQUENT TO 1966 – CONSTITUTIONAL AND STATUTORY PROVISIONS**

Under Article 21 of the Maryland Declaration of Rights, "in all criminal prosecutions, every man hath a right . . . to a speedy trial[.]"  And we have held that "[t]he speedy trial right under the Maryland Constitution is coterminous with its Federal counterpart and any resolution of a claim under the Sixth Amendment will be dispositive of a parallel claim under Article 21."  *Erbe v. State*, 25 Md. App. 375, 380 (1975), *aff'd*, 276 Md. 541 (1976) (internal citation and quotation marks omitted).

**CRIMINAL LAW – TIME OF TRIAL – DECISIONS SUBSEQUENT TO 1966 – DELAY ATTRIBUTABLE TO PROSECUTION**

No Maryland appellate decision had specifically addressed whether and how delays caused by interlocutory appeals initiated by the State should be weighed in a speedy trial analysis.  On the other hand, federal courts have held that an interlocutory appeal by the prosecution "is a valid reason that justifies delay" and ordinarily the resulting delay will not be accorded "any effective weight" in a speedy trial analysis.  *United States v. Loud Hawk*, 474 U.S. 302, 315–16 (1986); *see also United States v. Bishton*, 463 F.2d 887, 889 (D.C. Cir. 1972) ("the time spent on appeals is not generally included for purposes of calculating the period of delay in prosecution").  But if the issue appealed by the prosecution is "clearly tangential or frivolous," the delay resulting from the appeal should weigh heavily against it.  *Loud Hawk*, 474 U.S. at 315–16.

**CRIMINAL LAW – TIME OF TRIAL – DECISIONS SUBSEQUENT TO 1966 – DELAY ATTRIBUTABLE TO PROSECUTION**

As set forth in *United States v. Herman*, 576 F.2d 1139, 1146 (5th Cir. 1978), which we find instructive in the *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972), analysis in this case, relevant factors to assess the reasonableness of the interlocutory appeal include the strength of the government's position on the appealed issue, the importance of the issue in the posture of the case, and the seriousness of the crime.  The defendant bears the burden of showing that the State acted in bad faith in pursuing the interlocutory appeal.

Circuit Court for Anne Arundel County
Case No. 02-K-14-001626

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 3245

September Term, 2018

_____

BASHUNN CHRISTOPHER PHILLIPS

v.

STATE OF MARYLAND

_____

Fader, C.J.,
Nazarian,
Kenney, James A., III
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Kenney, J.

_____

Filed: April 30, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Appellant, Bashunn Christopher Phillips, was charged with the December 10, 2013 murder of Shar'ron Mason on July 18, 2014. His trial began approximately four years later on July 9, 2018. The extended aspect of this delay began on August 7, 2015, when appellant filed a motion *in limine* to exclude evidence related to cell tower maps that the State intended to use to establish the approximate location of appellant's cell phone on the morning of December 10, 2013.[1] The circuit court granted appellant's motion, and the State requested in banc review.[2] When the in banc panel reversed the order *in limine*, appellant appealed and the State responded with a motion to dismiss.

In *Phillips v. State*, 233 Md. App. 184 (2017) (*Phillips I*), this Court denied the State's motion to dismiss the appeal and reversed the ruling of the in banc panel for lack

---

[1] Relying on *Reed v. State*, 283 Md. 374 (1978) and other authority appellant asked the Circuit Court for Anne Arundel County to exclude evidence involving a "drive test" purportedly measuring the coverage area of a cell phone tower that was used by appellant's cell phone on the date of Ms. Mason's murder.

The circuit court explained a "drive test" in its memorandum opinion as follows:

> A drive-test is generally conducted by cell phone providers using either a scanner or test phone to measure the signal strength in order to determine the true coverage area for a particular cell tower and any gaps in their network. The person drives around a particular neighborhood and the JDSU equipment plots the latitude, longitude, and energy emitted by the cell tower at the location.

JDSU is an abbreviation for "JDS Uniphase Corporation," the company that creates the drive test software.

[2] Black's Law Dictionary (11th ed. 2019) defines "en banc" [from the Law French "on the bench"] as "[w]ith all judges present and participating; in full court" and explains that it is "[a]lso spelled *in banc*." The Maryland Constitution and the Maryland Rules use "in banc," which we use except in quoting references to "en banc" in the record.

of jurisdiction. The Court of Appeals granted certiorari review and, on February 20, 2018, affirmed our holding that the State had no authority to seek in banc review of an evidentiary ruling in *State v. Phillips*, 457 Md. 481, 512 (2018) (*Phillips II*).

Throughout the pre-trial delay, appellant was incarcerated. On April 8, 2018, he filed a motion to dismiss for violations of his right to a speedy trial, which the circuit court denied on June 15, 2018.

Appellant presents one question in his timely appeal:

Was his right to a speedy trial violated?

As we explain below, we answer that question "no" and affirm the decision of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Timeline of Events*

Appellant was indicted on July 18, 2014 and arrested on July 22, 2014 on charges related to the murder of Ms. Mason on December 13, 2013. On July 25, 2014, he filed his first request for a speedy trial as part of an omnibus motion. The court granted appellant's August 7, 2015 motion *in limine* on February 12, 2016, and that same day, the State requested in banc review of the court's ruling based on Maryland Constitution, Article IV,

section 22,[3] and Maryland Rules 4-352[4] and 2-551.[5]  Previously, a trial date of March 9,

2016 had been postponed because the hearing on appellant's motion *in limine* had not been

completed.

---

[3]  Article IV, section 22, of the Maryland Constitution provides:

> Where any trial is conducted by less than three Circuit Judges, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of three Judges of the Circuit, who shall constitute a court in banc for such purpose; and the motion for such reservation shall be entered of record, during the sitting at which such decision may be made; and the procedure for appeals to the Circuit Court in banc shall be as provided by the Maryland Rules.  The decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party at whose motion said points, or questions were reserved; but such decision in banc shall not preclude the right of Appeal by an adverse party who did not seek in banc review, in those cases, civil or criminal, in which appeal to the Court of Special Appeals may be allowed by Law.  The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of the District Court, nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law.

[4] Maryland Rule 4-352 states:

> In banc review of a circuit court's judgment or determination is governed by the provisions of Rule 2-551, except that the right of review does not apply to criminal actions exempted under the Maryland Constitution. In applying Rule 2-551, references to Rules 2-517, 2-520, and 2-533 shall be construed as references to Rules 4-322, 4-325, and 4-331(a) respectively.

[5] Maryland Rule 2–551 provides in pertinent part:

> (a) Generally. When review by a court in banc is permitted by the Maryland Constitution, a party may have a judgment or determination of any point or question reviewed by a court in banc by filing a notice for in banc review.

Appellant, arguing that the in banc panel was without jurisdiction to hear the appeal, filed a Motion to Dismiss State's Request for In Banc Review. Appellant contended that Article IV, section 22, of the Maryland Constitution permits in banc review only when a direct appeal is allowed and the State had no statutory right to appeal the court's order. The State responded that in banc review of a trial court's decision was not an "appeal," and that the Maryland Constitution provided the right to an in banc determination in this context.

On February 25, 2016, trial was postponed until August 29, 2016 at the State's request over defense counsel's objection.[6] At the postponement hearing, defense counsel argued that, in seeking in banc review, the State was "delay[ing] trial for a motion that has no merit." The in banc panel denied appellant's motion to dismiss on March 24, 2016, stating that it would reconsider the motion after a hearing.

The in banc panel held a hearing on May 17, 2016, and, on June 3, 2016, issued a Memorandum Opinion & Order denying the appellant's motion to dismiss and reversed the circuit court's decision excluding the drive-test evidence.

Appellant noted an interlocutory appeal to this Court on June 13, 2016. The State moved to dismiss the appeal, arguing that appellant lacked the statutory authority to appeal

---

Issues are reserved for in banc review by making an objection in the manner set forth in Rules 2–517 and 2–520. Upon the filing of the notice, the Circuit Administrative Judge shall designate three judges of the circuit, other than the judge who tried the action, to sit in banc.

[6] Appellant had either requested or agreed to all postponements before February 25, 2016.

an evidentiary ruling before a trial had been conducted, and that the proper avenue to appeal the in banc panel's decision was to do so after the trial.

We issued a reported opinion on June 28, 2017, stating that "the case law is unambiguous that 'when no appeal from a circuit court order could be taken to the Court of Special Appeals . . . , then no appeal can be taken to a court in banc.'" *Phillips I*, 233 Md. App. at 212 (quoting *Bd. of License Comm'rs for Montgomery Cty. v. Haberlin*, 320 Md. 399, 407 (1990)). We held that the in banc panel did not have jurisdiction to review the trial court's ruling on the motion *in limine* because it was not a final judgment, and that the exception provided to the State under CJP § 12-302(c)(3)(i) did not apply because the evidence was not excluded by the court on constitutional grounds. As to the State's contention that appellant had to wait to appeal the in banc panel's decision, we stated:

> [T]he proper time to appeal a decision of an in banc panel is directly after the decision of the in banc panel. A party who waits to appeal until after remand and final judgment by the circuit court loses the ability to argue those points decided by the in banc panel. This is contrary to the State's contention, just mentioned, that Phillips must wait until *after* a trial and verdict to offer any allegations of error concerning the in banc panel's decision. In fact, if Phillips were to follow the State's advice and wait until a full trial, verdict, and appeal to this Court, he would be foreclosed from offering argument concerning the decision of the in banc panel[.]

*Phillips I*, 233 Md. App. at 197–98 (internal citations and footnotes omitted).

On October 10, 2017, the Court of Appeals granted the State's certiorari petition. On February 20, 2018, that Court, in *Phillips II*, 457 Md. 481, affirmed the judgment of this Court that the ruling on appellant's motion *in limine* was not subject to in banc review.

5

On April 8, 2018, appellant, alleging that his right to a speedy trial had been violated, filed a motion to dismiss. He contended that, while delays caused by defense appeals in criminal cases are "not relevant to the speedy trial analysis," the delay in this case was "initiated by the State's attempt to pursue an appeal to which it was not entitled." Citing *Ward v. State*, 52 Md. App. 63, 77 (1982), appellant acknowledged that "[d]elays caused by government appeals should be charged against the State only when the appeal is taken in bad faith or as a dilatory tactic." But "[t]he State should have known that from the plain language of the Maryland Rules, the Maryland Constitution, and applicable statutes that it had no legal basis to support filing the request for an in banc panel." In appellant's view, all delays after March 9, 2016 were attributable to the State:

> As [appellant] either requested or acquiesced to all postponements prior to February 25, 2016, [he] does not argue that the entirety of the delay in this case was attributable to the State. However, all of the delay after the March 9, 2016, trial date was postponed should be charged to the State.

In its April 23, 2018 response, the State did "not dispute that the speedy trial clock began to run on July 18, 2014 and that the subsequent delay [was] sufficient to merit constitutional scrutiny." It acknowledged that the delay "is a factor to be a considered" but, relying on *Glover v. State*, 368 Md. 211, 225 (2002), it stated that it was "not a weighty factor." The State countered appellant's contention that it was responsible for all delays occurring after March 9, 2016 as "not consistent with the case law." And that the "intervening delay, between August 29, 2016 and October 10, 2017 [was] attributable to

6

the [appellant] . . . . because [he] was pursuing an appeal of the unanimous ruling of the three judge panel."[7]

At the June 15, 2018 hearing on his speedy-trial motion, appellant again stated that the relevant period of delay "is between March of 2016 and today [June 15, 2018]," arguing:

> Although Mr. Phillips was indicted in July of 2014, for that first two-year period, we either agreed to or asked for the postponements. The delay that I'm talking about is from the request from the – for the three-judge panel and the postponement in March of 2016.
>
> There are places in the State's response where they refer to the fact that Mr. Phillips was serving a sentence during the time of the delay in his trial, and that's important because the prejudice that I'm talking about for the purpose of speedy trial analysis is pre-trial incarceration.
>
> *       *       *
>
> What I am arguing is that the delay was initiated by the State because they filed an en banc review. And the decisions by both the Court of Special Appeals and the Court of Appeals are very clear, and they agree with the argument that we've been making from the very beginning, which is that the three—judge en banc review is a state law remedy that's rarely pursued, but it's treated as an equivalent to an appeal, and that you can only file an en banc review of something that you are entitled to appeal to the Court of Special Appeals, and because they didn't have that right, they did not have the right to request an en banc review.

In addition, appellant argued that "the en banc was requested in bad faith" and that "[t]he fact that three judges end up being wrong shouldn't be held against [appellant] for

---

[7] August 29, 2016 was the trial date set at the February 25, 2016 hearing for a delay requested by the State. October 10, 2017 was when the Court of Appeals granted the State's petition for writ of certiorari.

the purpose of speedy trial." Appellant claimed that, even without the excluded evidence, the State had cell phone tower evidence showing that appellant's phone was not using the tower closest to his home at the time of the murder:

> So, the State had the evidence that it needed. It was upset by the Court's ruling and was grasping at straws to find any possible way to get it overturned, and in order to do so, it pursued a remedy that was illegal, that should have immediately been dismissed, that shouldn't have been pursued in the first place, and they caused a delay of over two years additional to the delay that had already happened.

The State "agree[d] that the delay caused by the request for the three-judge panel is obviously attributable to the State," but it argued that the most important *Barker*[8] factor is prejudice to the defendant. And that appellant, limiting his prejudice to his pre-trial incarceration, had not articulated prejudice "that would impact the trial itself."

The State also noted:

> But I think at the end of the day, I do agree with [appellant] that the case that's controlling in this is [*United States v.*] *Herman*[, 576 F.2d 1139, 1146 (5th Cir. 1978)], although it's not a state case. Maryland state cases haven't really delved into this issue specifically to a great extent, which is I think wh[y] both parties are relying on *Herman*. *Herman* really has the standard that the Maryland courts have adopted. When you're looking at the reasons for the delay and determining whether that reasoning — whether the reasons for the delay sort of counts for or against the State or Defense in terms of the speedy trial analysis.

On June 26, 2018, the circuit court issued its order, denying appellant's motion to dismiss. In a footnote, the court explained its balancing of the *Barker* factors:

---

[8] In determining whether the defendant's right to a speedy trial has been violated, the Supreme Court of the United States has set forth four factors that the court must weigh, which we will discuss in more detail later. *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972).

8

Defendant acknowledges that he either requested or acquiesced to all postponements prior to February 25, 2016. Thus, the length of the delay will be counted from February 25, 2016 and is more than two years and four months. However, "[t]he length of delay, in and of itself, is not a weighty factor, but rather the duration of the delay is closely correlated to the other factors, such as the reasonableness of the State's explanation for the delay, the likelihood that the delay may cause the defendant to more pronouncedly assert his speedy trial right, and the presumption that a longer delay may cause the defendant greater harm." *Glover v. State*, 368 Md. 211, 225 (2002).

Defendant argues that all delays after from February 25, 2016 are attributable to the State's pursuit of an appeal to which it was not entitled under . . . Md. Rule 2-551, Md. Code Ann., Courts and Judicial Proceedings Article § 12-302, and Article IV, § 22 of the Maryland Constitution. The State does not dispute that the delays from February 25, 2016 to August 29, 2016 and after October 10, 2017 are attributable to the State. However, the State argues that the delay between August 29, 2016 and October 10, 2017, when Defendant was pursuing his appeal of the three-judge panel, is attributable to Defendant. This delay was completely foreseeable and a direct result of State's initial appeal. Indeed, Defendant had no choice but to pursue its appeal of the Court's in banc order. However, this Court does not find that the State filed the in banc request as a dilatory tactic. This Court does find that there was no substantial justification based upon existing law and the applicable rules for the filing of an in banc. The argument that since three (3) judges proceeded with the in banc is not persuasive. The delay from February 25, 2016 must be held against the State. To the extent that there is presumptive prejudice in the two-year and four-month delay, it is overcome by the Defendant's failure to identify any actual prejudice in his ability to prepare for or proc[e]ed to trial.

Defendant filed a demand for a speedy trial on July 25, 2014. Defendant objected to the February 25, 2016 postponement. The State does not dispute that Defendant did assert his right to a speedy trial at said hearing.

In considering the prejudice factor, the Court is to consider the interests of Defendant which the speedy trial right was designed to protect, namely, (a) to prevent oppressive pretrial incarceration; (b) to minimize anxiety and concern of the accused; and (c) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. *Barker* [*v. Wingo*, 407 U.S. 514, 532 (1972)]. Defendant's argument focuses on the length of pretrial incarceration. However, he makes no claim of anxiety and concern, nor any claim of impairment of preparation

9

of his case. This Court finds that Defendant's case has been in no way impaired by the delay.

After a bench trial that began on July 9, 2018, appellant was convicted of first-degree murder, use of a firearm in a felony, use of a firearm in the commission of a crime of violence, and wearing or carrying a handgun. He was sentenced to life imprisonment on the murder count and twenty years consecutive on the use of a firearm in the commission of a felony.

Further facts will be provided in the discussion.

## STANDARD OF REVIEW

The Court of Appeals has explained:

An appellate court reviews without deference a trial court's conclusion as to whether a defendant's constitutional right to a speedy trial was violated. *See Glover v. State*, 368 Md. 211, 220 (2002) ("In reviewing the judgment on a motion to dismiss for violation of the constitutional right to a speedy trial, we make our own independent constitutional analysis." (Citations omitted)).

*Howard v. State*, 440 Md. 427, 446–47 (2014). But, "in so doing, we defer to the circuit court's first level findings of fact unless clearly erroneous." *Henry v. State*, 204 Md. App. 509, 549 (2012) (internal citations omitted).

## DISCUSSION

### *Contentions*

Appellant contends that his constitutional right to a speedy trial was violated because of the length of the delay, the reasons for the delay, most specifically the in banc review, his assertion of his right, and the presumed prejudice to him. The State contends that appellant's constitutional right to a speedy trial was not violated because the "delay in

10

this case was not the product of bad faith and any delay in this prosecution did not appreciably prejudice [appellant]." In its view, the lack of any appreciable prejudice "outweighs the remaining factors."

*Analysis*

Under the Sixth Amendment to the Constitution of the United States, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]" U.S. Const. amend. VI. Under Article 21 of the Maryland Declaration of Rights, "in all criminal prosecutions, every man hath a right . . . to a speedy trial[.]" And we have held that "[t]he speedy trial right under the Maryland Constitution is coterminous with its Federal counterpart and any resolution of a claim under the Sixth Amendment will be dispositive of a parallel claim under Article 21." *Erbe v. State*, 25 Md. App. 375, 380 (1975), *aff'd*, 276 Md. 541 (1976) (internal citation and quotation marks omitted).

As noted above, we apply the four-factor balancing test articulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972) to determine whether a defendant's constitutional right to a speedy trial was violated. *See Howard v. State*, 440 Md. 427, 447 (2014). Those factors are: (1) the "[l]ength of delay"; (2) the "reason for the delay"; (3) the "defendant's assertion of" his speedy trial right; and (4) "prejudice to the defendant." *Barker*, 407 U.S. at 530. "None of these factors is, in itself, either necessary or sufficient to find a violation of the speedy trial right; instead, they are related factors and must be considered together with such other circumstances as may be relevant." *Nottingham v. State*, 227 Md. App. 592, 613 (2016) (internal citation and quotation marks

omitted). In other words, there is no bright-line rule to determine whether a defendant's right to a speedy trial had been violated. We employ instead a balancing test in which we weigh "the conduct of both the prosecution and the defendant." *State v. Kanneh*, 403 Md. 678, 688 (2008) (quoting *Barker*, 407 U.S. at 530).

## A. Length of Delay

Under a Sixth Amendment speedy trial analysis, the threshold issue is whether the length of the delay is presumptively prejudicial. *See Barker*, 407 U.S. at 530 (explaining that unless "there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."). For that reason, the length of delay plays a dual role "because a delay of sufficient length is first required to trigger a speedy trial analysis, and the length of the delay is then considered as one of the factors within that analysis." *Kanneh*, 403 Md. at 688.

We have explained that "[t]he arrest of a defendant, or formal charges, whichever first occurs, activates the speedy trial right." *Wheeler v. State*, 88 Md. App. 512, 518 (1991) (internal citation omitted). "[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530–31. But the length of delay, although a factor to be considered in a speedy trial analysis, is not, "in and of itself," "a weighty factor." *Glover*, 368 Md. at 225.

The charges in this case were brought against appellant on July 18, 2014, and his trial began on July 9, 2018. The delay was approximately four years. Appellant, in his motion to dismiss, stated that he "either requested or acquiesced to all postponements prior

to February 25, 2016" and that he was not arguing that "the entirety of the delay in this case was attributable to the State." At the June 15, 2018 hearing on his motion to dismiss, he argued that only delays after March of 2016 were chargeable to the State:

> First, with regard to the facts for the purpose of this motion, fundamental, we both agree. The delay that I'm talking about is between March of 2016 and today. Although [appellant] was indicted in July of 2014, for that first two-year period, we either agreed to or asked for the postponements. The delay that I'm talking about is from the time of the request from the–for the three–judge panel and the postponement in March of 2016.

Appellant acknowledges on appeal his prior concession that the "relevant delay included only the period from March 9, 2016, onward." But he argues that this earlier "concession is not binding on appeal as it is an incorrect application of the law." Relying on *Greenstreet v. State*, 392 Md. 652, 667 (2006), he argues "a party may not concede a point of law to the exclusion of appellate review as necessary and proper to decide the case." He now asserts that "[t]he total delay is just shy of four years regardless of the assignment of fault/blame for each portion of the delay[.]" The State, quoting *Burch v. State*, 346 Md. 253, 289 (1997), responds that appellant should not "be allowed to assert one position [below] and another, inconsistent position on appeal." It acknowledges, however, that "irrespective of the date from which the delay is measured . . . the delay involved here is sufficient to trigger constitutional scrutiny."

We agree that, whether the end date is calculated from the date of the appellant's indictment or from March 9, 2016, the length of delay—either nearly four years or two years and over four months—is "presumptively prejudicial" and triggers the *Barker*

balancing test. *Barker*, 407 U.S. at 530; *see, e.g.*, *Divver v. State*, 356 Md. 379, 389 (1999) ("Here the delay of one year and sixteen days raises a presumption of prejudice and triggers the balancing test."); *Brady v. State*, 291 Md. 261, 265 (determining that fourteen-month delay triggered analysis).

Clearly, the length of delay weighs in appellant's favor, but standing alone, it is not a weighty factor.[9] Rather it is a factor to be "closely correlated to the other factors, such as the reasonableness of the State's explanation for the delay, the likelihood that the delay may cause the defendant to more pronouncedly assert his speedy trial right, and the presumption that a longer delay may cause the defendant greater harm." *Glover v. State*, 368 Md. 211, 225 (2002). "The length of delay . . . appears to be significant principally as it affects the legitimacy of the reasons for delay and the likelihood it had prejudicial effects." *Id.* at 225 (quoting *Dickey v. Florida*, 398 U.S. 30, 48 n. 12, 90 S.Ct. 1564, 1574 n. 12, 26 L.Ed.2d 26, 38 n. 12 (1970) (Brennan, J., concurring)).

## B. Reasons for the Delay

Closely related to length of delay is the State's reason justifying a delay with different weights being assigned to different reasons. *Henry v. State*, 204 Md. App. 509 (2012). For example, a "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government" while "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless

---

[9] The delay between July 18, 2014 and August 29, 2016 (the assigned trial date prior to the in banc review) appears to be effectively neutral as between appellant and the State.

14

should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *State v. Kanneh*, 403 Md. 678 (2008) (quoting *Barker*, 407 U.S. at 531); *Lloyd v. State*, 207 Md. App. 322 (2012).

No Maryland appellate decision has specifically addressed how delays caused by an interlocutory appeal initiated by the State should be weighed in a speedy trial analysis. On the other hand, federal courts have held that an interlocutory appeal by the prosecution "is a valid reason that justifies delay" and ordinarily the resulting delay will not be accorded "any effective weight" in a speedy trial analysis. *United States v. Loud Hawk*, 474 U.S. 302, 315–16 (1986); *see also United States v. Bishton*, 463 F.2d 887, 889 (D.C. Cir. 1972) ("the time spent on appeals is not generally included for purposes of calculating the period of delay in prosecution"). But if the issue appealed by the prosecution is "clearly tangential or frivolous," the delay resulting from such an appeal should weigh heavily against it. *Loud Hawk*, 474 U.S. at 315–16.

Relevant factors to assess the reasonableness of an interlocutory appeal include "the strength of the government's position on the appealed issue, the importance of the issue in the posture of the case, and . . . the seriousness of the crime." *Id.* at 315 (citing *United States v. Herman*, 576 F.2d 1139, 1146 (5th Cir. 1978). The defendant bears the burden of showing that the State acted in bad faith in pursuing the interlocutory appeal. *See Greene v. State*, 237 Md. App. 502, 516 (2018) (observing that the defendant "shoulder[s] the burden of showing that the circuit court's finding that the State had acted in good faith was clearly erroneous").

In this case, both parties have found support for their position in *United States v. Herman*, 576 F.2d 1139, 1143, 1145 (5th Cir. 1978). In that case, Herman argued that he had been denied his right to a speedy trial after the government, in accordance with appellate rights expressly granted in 18 U.S.C. § 3731,[10] appealed the court's suppression of his incriminating statements. The *Herman* Court held that the court, when assessing

---

[10] The language of 18 U.S.C. § 3731 provides:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

> An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

> The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

> The provisions of this section shall be liberally construed to effectuate its purposes.

16

whether delays caused by government-initiated interlocutory appeals are justifiable, should

consider certain factors:

> An interlocutory appeal by the government is generally a valid reason that justifies an appropriate delay. Of course, when the government acts arbitrarily, negligently, or in bad faith, the delay may not be justifiable. And when, as here, but as in none of the cases we have cited, the defendant is incarcerated because of inability to make bond pending the government's interlocutory appeal, we must analyze the propriety of the appeal more carefully. We must consider at least three factors: the necessity of the appealed question to the government's case, the strength of the government's position on that issue, and the seriousness of the crime. A delay for an appeal on these facts cannot be justifiable if the appeal was about an unimportant or tangential issue or if the government's position was so weak that it should have known it would lose. Moreover, the charged offense must be serious to justify keeping a person presumed innocent in jail a long time before trial pending appeal.

*Herman*, 576 F.2d. at 1146.

In applying those factors, the *Herman* court determined that the question presented

in the interlocutory appeal was "an important one" and explained the importance of the

suppressed statements to the government's case as follows:

> These statements, if admitted, would have made the government's case before the jury virtually certain. Without them, the government's case on the robbery count, (and on the degree of the murder count) is totally circumstantial.

*Id.* at 1146–47. The court also found the government's position on appeal to be "strong,"

and, although it ultimately lost, noted that the court required oral argument in the case,

published the opinion, which produced both majority and concurring opinions. *Id.* at 1147.

Finally, the court considered the seriousness of the crimes—murder and robbery—which

it found justified the delay over the admission of key evidence. *Id.* The *Herman* court

17

concluded that "[a]lthough delays to seek interlocutory appeals may not be justified in every case, this delay was appropriate." *Id*.

Appellant contends that "[i]f this Court adopts and applies the *Herman* factors to this case, the conclusion that the State's delay to pursue the in banc remedy was not justified is unavoidable." He adds that "while the seriousness-of-the-offense factor weighs in the State's factor, the two remaining factors are decisively in appellant's favor." In appellant's view, the "circumstances under which the State pursued the in banc in this case provide a stark contrast to the government's reasonable appeal in *Herman*." The State responds that its failure to prevail "does not establish that it was unreasonable for the State to pursue the interlocutory appeal."

The first *Herman* factor is "the necessity of the appealed question to the government's case." In *Phillips I*, 233 Md. App. 184, 188–89 (2017), this Court summarized the evidence that was the subject of the appeal and appellant's arguments against its admissibility:

> The State notified Phillips that it intended to offer at trial a radio frequency ("RF") signal propagation map purporting to establish the approximate location of Phillips's phone on the morning of December 10, 2013. The propagation map represented data obtained through a drive test conducted by Special Agent Richard Fennern, a member of the Federal Bureau of Investigation's Cellular Analysis and Survey Team, on October 23, 2014.
>
> Phillips filed a motion *in limine* on August 7, 2015, seeking to exclude the RF signal propagation map and related testimony. Phillips argued that the method used to create the map was not generally accepted as reliable within the relevant scientific community under Maryland's *Frye–Reed* test for admissibility of evidence based on novel scientific methodology. Phillips acknowledged that cell phone tower "ping" evidence is admissible, but drew

a distinction between the method used to create the RF signal propagation map and the collection of historical cell phone "ping" evidence. Phillips argued that a drive test—in this case conducted ten months after the murder of Shar–Ron Mason—"is merely a snapshot in time that cannot give any reliable prediction of where [radio frequency] signals were or where they were going over time." "In order for the test to be reliable, conditions would have to be analogous to those that existed on [the date of the murder] such as but not limited to weather, time, volume of call traffic, and the state of the equipment in use by the cell phone company."

\* \* \*

Phillips maintained that drive tests are routinely performed by cell phone companies to improve coverage and minimize "dropped calls," but that they are not generally accepted in criminal investigations. Testifying for the defense, William Folson, accepted as an expert witness "in the field of cellular technology and historical cell site analysis" explained that he "consider[s] [drive tests] a waste of time" because "[t]hey add no value to the historical analysis of a cell phone." He further testified that the manner in which Special Agent Fennern had performed the drive test was not accepted as reliable in the relevant scientific community. Mr. Folson explained that the RF signal range in December 2013 when the murder occurred would be different than the range in October 2014 when the drive test was conducted because the strength of RF signals fluctuate. Because of this, according to Mr. Folson, a drive test is not representative of the strength of the RF signals on any other date. He also pointed out that drive tests were not peer reviewed, accepted by the scientific community, or used in criminal investigations.

The circuit court agreed with the defense and excluded this evidence. Appellant did not challenge, and the court's ruling did not restrict, the State's use of cell-site analysis based on call records for appellant's cell phone and determining which cell towers routed calls made and received by appellant's phone on the day of the murder. For that reason, appellant contends the drive test was merely tangential to the State's case:

> The State's evidence at trial including the following: evidence of motive in that appellant had a pending assault case against the victim, evidence that appellant was texting his brother about hiding "it" while he was

19

at the police station for questioning, evidence that ammunition matching the ammunition used to kill the victim was found in appellant's residence with his fingerprint on it, a gun was found in appellant's residence which testing showed fired the shots that killed the victim, cell phone tower evidence showing that appellant's cell phone stopped using the tower nearest his home at the time of the murder and moved to another location where it used a tower near the victim's home, and jail calls between appellant and his brother discussing hiding something and the police finding something which the State argued was the murder weapon. (*See* court's oral verdict at p. 2-8 on July 18, 2018). In light of this extremely strong evidence linking appellant to the murder, which included cell site evidence that appellant's phone was utilizing a tower near the victim's home at the time of the murder but another tower closer to appellant's home before and after, the drive test evidence was of minimal importance and did not justify pursuing an appeal that would delay trial by several years.

The State responds that the drive test was "not tangential to this first-degree murder case." It characterizes that case as entirely "circumstantial," because there was "no witness identification or DNA evidence connecting Phillips to the scene" of the murder. For that reason, it views the drive test results to be important to place appellant at the scene.

The second *Herman* factor is the strength of the government's position on the appealed issue. As we noted in *Phillips I*, 233 Md. App. at 196 n. 8, 213, "[t]he State also observes, without noticing the apparent irony, that the purpose of the final judgment rule is 'to prohibit piecemeal disposition of litigation.'" We held that "[b]ecause the State had no right to appeal from the trial court order granting [appellant's] motion *in limine*, the in banc panel was without jurisdiction." And the Court of Appeals agreed in *Phillips II*, 457 Md. at 510–13:

> [T]he State had failed to overcome the inconvenient fact that, substantively, it had no authority to appeal the evidentiary ruling by Judge Silkworth. Its right of appeal in a criminal case is limited to those matters specified in

20

Courts Article, § 12-302(c),[11] and the *in limine* order in this case is not among them.

It confirmed the holdings in earlier Maryland cases that "when no appeal from a circuit court can be taken to the Court of Special Appeals or . . . the Court of Appeals, then no appeal can be taken to a court in banc." *Id.* at 513.

That said, however, we are not persuaded that the State's request for in banc review was a dilatory tactic made in bad faith or a "deliberate attempt to delay the trial in order to hamper the defense." *State v. Kanneh*, 403 Md. 678 (2008) (quoting *Barker*, 407 U.S. at 531). As Judge Wilner, referring to Maryland Constitution, Article IV, section 22,

---

[11] Md. Code Ann., Courts and Judicial Proceedings Article § 12-302(c) provides, in pertinent part:

(c)(1) In a criminal case, the State may appeal as provided in this subsection.

(2) The State may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition.

(3) The State may appeal from a final judgment if the State alleges that the trial judge:

(i) Failed to impose the sentence specifically mandated by the Code; or

(ii) Imposed or modified a sentence in violation of the Maryland Rules.

(4)(i) In a case involving a crime of violence as defined in § 14-101 of the Criminal Law Article, and in cases under §§ 5-602 through 5-609 and §§ 5-612 through 5-614 of the Criminal Law Article, the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Maryland Constitution, or the Maryland Declaration of Rights.

observed for the Court of Appeals in *Phillips II*, 457 Md. 481, 488 n.1 (2018), "[t]he fact that there have been so many appellate Opinions, occasionally with dissents and concurring Opinions, attempting to determine the meaning of the language in § 22 suggests that the language of that section was not 'carefully written.'" Although the State did not prevail, the result was two reported opinions, which lends support to its contention that the "appeal presented a valid question that necessitated clarification from the appellate courts."[12]

Based on our application of the *Herman* factors, which we find instructive in the *Barker* analysis, we conclude that the first two factors favor, but, in balance, not resoundingly, appellant.[13] We agree with appellant that the third *Herman* factor—the seriousness of the offense—weighs in favor of the State. Accordingly, we do not weigh the reasons for delay in this case heavily against the State.

### C. Assertion of the Right

The third *Barker* factor is the "defendant's responsibility to assert his right." *Henry v. State*, 204 Md. App. 509, 554 (2012) (quoting *Barker*, 407 U.S. at 531). "Whether and

---

[12] The circuit court recognized the value provided to circuit courts by the Court of Appeals' opinion in the underlying case:

> There—there is some merit to the argument that there is now a benefit to Administrative Judges, I guess across the state that you have to look carefully at requests for *en banc* that are—that are sought. And then not only in a case like this, but there may be other circumstances where an *en banc* is sought where it's inappropriate to even empanel one. So there—there may be some appellate—or, there certainly is some appellate merit to that.

[13] Like the circuit court, we assign no weight against appellant for his appeal of the in banc decision.

how a defendant asserts his right is closely related to the other factors[.]" *Barker*, 407 U.S. at 531. The strength of a defendant's assertion, and not just its occurrence, may "indicate whether the delay has been lengthy and whether the defendant begins to experience prejudice from that delay." *Glover*, 368 Md. at 228.

Prior to his motion to dismiss on April 8, 2018, appellant asserted his right to a speedy trial in the omnibus motion filed by his counsel when she entered her appearance on July 25, 2014. He again asserted that right when he objected to the February 25, 2016 postponement on the grounds that the State's pursuit of in banc review was "delay[ing] trial for a motion that has no merit." And the State "does not contest that [appellant] has diligently pursued his right to a speedy trial, which supports his claim." Under the circumstances of this case we weigh the factor in favor of appellant, but in the absence of "any specific instance of impairment to his defense," we do not weigh it heavily against the State. *Hallowell v. State*, 235 Md. App. 484, 518 (2018).

## D. Prejudice

Ultimately, "the most important factor in the *Barker* analysis is whether the defendant has suffered actual prejudice." *Henry*, 204 Md. App. at 554. The prejudice calculus involves the three interests supporting the right to a speedy trial: preventing an oppressive pretrial incarceration; minimizing the anxiety and concern of the accused; and limiting the possibility that the defense will be impaired. *See Barker*, 407 U.S. at 532. The "most serious" of those three is "the last because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* We, in no way, discount the

23

length of appellant's pre-trial incarceration and its attendant anxiety and concern, but the burden to show actual prejudice rests on the defendant. *Henry*, 204 Md. App. at 554 (internal citation omitted). And the failure to do so weighs against the defendant. *See Wilson v. State*, 148 Md. App. 601, 639 (2002) ("accord[ing] great weight to the lack of any significant prejudice resulting from the delay" where the only prejudice stemmed from pre-trial incarceration).

In this case, appellant never alleged that his pre-trial incarceration impaired his defense in any way or caused him any particular anxiety or concern. At the motion hearing, defense counsel confirmed that, aside from his incarceration, appellant had not suffered prejudice:

> THE COURT: What the State's saying is that absent all that, the most important factor being prejudice . . . . There's really no actual prejudice. . . . He's in jail; that's certainly correct. But are there witnesses who are lost, memories lost, things you—you can't do?
>
> [DEFENSE COUNSEL]: No.
>
> THE COURT: Something that's happened to him? What—anything else . . . . You're saying you don't need it.
>
> [DEFENSE COUNSEL]: No, but I wouldn't characterize the absence of those specific things as no actual prejudice. Pre-trial incarceration is a form of actual prejudice.
>
> THE COURT: No, other than the pre-trial incarceration . . .
>
> [DEFENSE COUNSEL]: Correct. We—we don't have any specific evidence of that, but that doesn't mean that the Court can't balance the remainder of the factors and say that means that there was sufficient prejudice because there were two—almost two and a half years where nothing was happening and he was sitting in jail.

Simply put, the only asserted prejudice was the presumed prejudice associated with extended pretrial incarceration which resulted from the in banc review and the subsequent appeals that followed. For that reason, the extended delay in this case does not weigh heavily in favor of the appellant. *See Wilson*, 148 Md. App. at 639.

### E. Balancing of the Factors

Our independent review of the *Barker* factors persuades us that: (1) the length of delay between arrest and trial was not egregious in light of all the circumstances; (2) the reason for most of the extended delay, while ultimately attributable to the State and its request for in banc review of an evidentiary issue, was not made in bad faith or for the purpose of undermining appellant's defense; (3) appellant asserted his speedy-trial right and diligently pursued that right; and (4) appellant has not identified any specific prejudice other than the fact that he remained incarcerated while awaiting his trial. Having weighed and balanced those factors, we hold that appellant's right a speedy trial was not violated in this case.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

25

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/3245s18cn.pdf